CARMEN VÁZQUEZ, demandante y apelada, *v.* EMILIO ZEDA y TERESA ZEDA MARTÍNEZ, demandados y apelantes.

Núm. 8211.—*Sometido:* Abril 18, 1941. *Resuelto:* Abril 30, 1941.

J. *Valdejuli Rodríguez,* abogado de los apelantes; *Isaías M. Crespo,* abogado de la apelada.

EL JUEZ ASOCIADO SEÑOR TRAVIESO emitió la opinión del tribunal.

El demandado Emilio Zeda Martínez y la que fué su esposa, la demandante Carmen Vázquez, eran dueños de bie-

nes gananciales consistentes en un condominio de siete octavas partes de una casa y solar en Arecibo. Alega la demandante, que el demandado Zeda, siendo aún su esposo, la requirió para que otorgara a su favor una escritura de poder, facultándole para que a nombre de los dos vendiera la citada propiedad; que en vez de un poder, el demandado hizo redactar una escritura por la cual aparecen ambos cónyuges vendiendo el citado condominio a la otra demandada, Teresa Zeda Martínez, hermana de Emilio, "por un precio simulado el cual ni en todo ni en parte ni en ninguna forma fué pagado por la demandada"; que la demandante firmó la escritura bajo la confianza que tenía en su esposo y en la hermana de éste; que nunca fué el propósito de la demandante vender la propiedad y que si lo hizo fué debido a las falsas simulaciones de ambos demandados; que después de haber firmado dicha escritura, la demandante, siguiendo instrucciones de su esposo se ausentó para los Estados Unidos, y que su esposo aprovechando su ausencia radicó contra ella una demanda de divorcio en la que alegaba "que no existen bienes gananciales entre ellos," defraudando así la buena fe de la demandante. Pide la demandante que se decrete la nulidad de dicha escritura y que se ordene la cancelación de su inscripción en el registro de la propiedad.

Contestaron los demandados negando todos los hechos expuestos en la demanda y alegaron que dichos hechos son insuficientes para determinar causa de acción contra los demandados.

El caso fué visto y quedó sometido el día 5 de octubre de 1939. El día 13 del mismo mes, la demandante solicitó se abriera el caso de nuevo y que se le permitiera ofrecer en evidencia una certificación del registrador de la propiedad acreditativa de que el mismo día en que se otorgó la escritura cuya nulidad se pide, o sea en octubre 4, 1937, la demandada Teresa Zeda otorgó una escritura de hipoteca en garantía de un bono hipotecario al portador por $6,000. La corte inferior, apoyándose en la decisión en *Sucrs. de L. Villamil &*

*Co., S. en C.* v. *Quintana*, 45 D.P.R. 929, ordenó la reapertura del caso y admitió la certificación, no obstante la oposición de los demandados.

En noviembre 15, 1939, la corte inferior dictó sentencia declarando nula e inexistente la supuesta venta "en cuanto a los derechos de la demandante, o sea en cuanto a una mitad de 7/8 partes en el valor de la finca que se describe en la demanda," y ordenó la cancelación de la inscripción en cuanto a dicha mitad. Apelaron ambos demandados y alegan que la corte sentenciadora cometió error al declarar con lugar la demanda sin haberse demostrado la existencia de fraude; al decretar la liquidación de la sociedad de gananciales, que no fué pedida por la demandante; al dejar sin efecto un documento notarial con prueba débil y en contra de la presunción de su legalidad; y al dictar una sentencia no sostenida por la evidencia.

Examinaremos la prueba. La demandante ofreció primeramente una estipulación en la que las partes litigantes convinieron que la demandante si estuviese presente declararía lo siguiente:

"Que ella es divorciada de Emilio Zeda; que el día 4 de octubre de 1937 ella firmó una escritura que no leyó ni le fué leída ante el notario Aníbal Boneta; que ella ignoraba el propósito de dicha escritura; que su esposo Emilio Zeda le informó que era un poder autorizando a él a vender o hipotecar la propiedad descrita en la demanda; que ella no recibió dinero alguno de Emilio Zeda en pago de la propiedad; que ella no ha vendido nunca propiedad alguna a Teresa Zeda y mucho menos la propiedad descrita en la demanda; que ella se fué para los Estados Unidos el día 7 de octubre de 1937, o sea tres o cuatro días después del otorgamiento de dicha escritura porque su esposo la engañó ofreciéndole que iba a vender la casa para con el dinero irse a vivir con ella a Nueva York y poner entre ambos un negocio o bodega en esa ciudad; que dicha escritura se otorgó en el cafetín de Emilio Zeda y allí estaban presentes solamente el Lic. Boneta, Emilio Zeda, Carmen Vázquez y Candita Santiago; que la casa siempre ha estado y está siendo administrada por Emilio Zeda como dueño de ella."

Candita Santiago, a quien se menciona en la precedente estipulación como presente en el acto de firmarse la escritura, declaró: que un día a principio de octubre, yendo ella con la demandante hacia el cementerio, encontraron en su camino a Emilio Zeda, el demandado, quien las llamó y las invitó para que fueran a su cafetín situado por detrás del Asilo, por Salsipuedes; que en el cafetín, en un reservado, estaba Aníbal Boneta, el notario, con unos papeles; que Emilio le pidió a Carmen Vázquez "que le firmara para darle un poder para vender la casa, porque quería irse a Estados Unidos a poner un negocio aliá; que ella dudaba y le preguntó a Aníbal Boneta si le perjudicaría en algo y Boneta le dijo que no, que sólo era un poder de venta, que firmara y la hostigaba para que firmase; que Carmen Vázquez no leyó la escritura, pues cuando empezó a leerla, Zeda le decía: "Acaba de firmar; si es para vender; quiero acabar de vender esto para irme y embarcarme contigo"; que nadie leyó la escritura; que los únicos allí presentes eran Boneta, Emilio Zeda, Carmen Vázquez y la declarante; que en cuanto ella sepa no se pagó dinero alguno; que Carmen Vázquez firmó porque Emilio Zeda le dijo que era un poder para vender. Repreguntada, reafirmó su declaración de que cuando Carmen trató de leer la escritura, Zeda la hostigaba diciéndole: "Avanza, firma el poder para vender"; y ella firmó, creyendo que era un poder y no una venta.

Andrés Vázquez, hermano de padre de la demandante, declaró: que al enterarse por su hermana de que ésta había firmado un documento a su marido, fué a ver a Emilio Zeda y le pidió que le enseñase los papeles; que Zeda le dijo: "No te apures, que es un poder que me dió para vender la casa y este cafetín y cobrar un dinero de una hipoteca y después me tengo que ir para el Norte; que él insistió en que le mostrara los papeles, para verlos y leerlos y Zeda le dijo que los tenía su abogado; que en esa conversación estuvieron presentes Francisco y José Ernesto Tirado, a quienes él invitó precisamente para que oyesen lo que él iba a hablar con

Zeda; que Zeda le dijo que la casa no la había vendido todavía; que eso se lo dijo después de su hermana haber firmado la escritura que firmó en el cafetín; que su hermana embarcó para Estados Unidos el 7 de octubre de 1937 y él tuvo que pagarle el pasaje; que no pudo ver el documento porque Boneta estaba jugando gallos.

José Ernesto Tirado, testigo de la demandante, corroboró la declaración de Andrés Vázquez en cuanto a la conversación entre éste y el demandado Emilio Zeda.

Los demandados ofrecieron en evidencia una copia de la escritura en controversia, cuyo párrafo segundo lee así:

"SEGUNDO: Los esposos primeros comparecientes venden, ceden, renuncian y traspasan a favor del segundo compareciente señora doña Teresa Zeda Martínez los condominios en el inmueble aquí descrito, con cuanto le es anexo y permanente, con sus usos y servidumbres, por la cantidad de dos mil dollars, *cantidad que los vendedores confiesan haber recibido en este acto en billetes de banco del curso legal de manos del adquirente,* por lo que le dan carta de pago en forma." (Itálicas nuestras.)

Y para sostener la validez de la escritura impugnada, los demandados ofrecieron como única prueba el testimonio de Narciso Batista, cuyo nombre aparece en la escritura como testigo de su otorgamiento. Declaró: que conoce a la demandante y a los demandados; que el 4 de octubre de 1937 vió a la primera señora que está por ahí en la oficina de Aníbal Boneta; que vió allí también a Juan Rodríguez, un señor que le compró una casa y yo; *que no recuerda haber visto allí a Carmen Vázquez;* que lo que hacían allí era una escritura o venta, no recuerdo bien; que Boneta le leyó, pero él no se tomó interés y firmó, firmando también Juan Rodríguez; que todo eso ocurrió en la oficina de Boneta; que puede que Carmen Vázquez estuviera allí, pero no sabe si estaba.

Después de considerar y pesar toda la evidencia, la corte inferior llegó a las siguientes conclusiones:

(*a*) Que Carmen Vázquez, la demandante no dió un consentimiento expreso para un contrato real de compraventa.

(b) Que si bien es cierto que la demandante estampó su firma en la escritura, ella no tuvo el propósito de consentir una enajenación gratuita de los condominios.

(c) Que el demandado Emilio Zeda tuvo el propósito de perjudicar a la que era su esposa para evitar que ella le reclamara gananciales después del divorcio.

(d) Que no fué real la entrega de los dos mil dólares y que la escritura fué únicamente un instrumento simulado a favor de la hermana para evitar la liquidación de gananciales cuando se decretase el divorcio.

Las referidas conclusiones están ampliamente justificadas por los hechos y circunstancias que la prueba ha dejado establecidos. Es cierto que existe la presunción legal en favor de la validez de la escritura pública que ha sido impugnada. Empero, esa presunción no es concluyente y puede ser controvertida mediante evidencia demostrativa de que en su otorgamiento no se cumplió alguno de los requisitos necesarios para su validez o que los hechos en ella relatados son contrarios a la verdad.

Si tomamos en consideración que entre los dos demandados existe la relación de hermanos; que la escritura se hizo poco antes de embarcar la demandante para Estados Unidos; que el hermano de la demandante fué quien le pagó a ésta el pasaje; que poco tiempo después de embarcarse la demandante, el demandado entabló demanda de divorcio; que en el momento en que se firmó la escritura en el cafetín del demandado sólo estaban allí el notario, el demandado Zeda, la demandante y su acompañante Candita Santiago, sin que aparezca que en aquel acto estuviesen presentes la supuesta compradora y los testigos instrumentales; que el mismo día en que adquirió la finca por precio de $2,000, la compradora Teresa Zeda la hipotecó en garantía de un pagaré por $6,000; que la finca en controversia estuvo antes afecta a una hipoteca por $8,000; y, por último, que el notario que autorizó la escritura y los demandados, todos ellos, vecinos de Arecibo, pudiendo haber comparecido a sostener la validez del docu-

mento impugnado, se abstuvieron de hacerlo, de lo cual surge la presunción legal (artículo 464 del Código de Enjuiciamiento Civil, ed. 1933) de que esa evidencia fué voluntadiamente suprimida, porque de ser ofrecida hubiese resultado adversa a la parte demandada, es inevitable llegar a la conclusión de que la escritura de 4 de octubre de 1937 fué preparada y otorgada con el propósito deliberado y fraudulento de privar a la demandante de su propiedad y que la demandante fué inducida a firmarla por las falsas y fraudulentas representaciones del demandado, quien le hizo creer que lo que firmaba era un poder y no una venta.

Los demandados apelantes llaman nuestra atención hacia lo manifestado por la corte inferior al decidir en contra de los demandados la moción de *nonsuit* formulada al terminar la prueba de la parte actora. Dijo la corte:

"En realidad la prueba está débil, pero habiendo evidencia hasta la fecha de que se llevó a un sitio a la demandante para un propósito, o sea para otorgar un poder y que resultó después una venta y apareciendo, además, que en ese momento de firmar no se entregó importe alguno por el contrato que allí se estaba haciendo y que tampoco se leyó el contrato, *cosa que hasta ahora tenemos que suponer probado, salvo prueba en contrario,* la corte estiende que es preferible antes de dictar una resolución oír prueba de la parte contraria, para estar en condiciones más seguras para hacer justicia." (Itálicas nuestras.)

Es evidente que el juez sentenciador consideró que había evidencia que, salvo prueba en contrario, era suficiente para establecer tres hechos esenciales: (*a*) el engaño de que fué víctima la demandante, o sea la falta de consentimiento; (*b*) el no haberse pagado en el momento de firmar el precio de la venta, o sea falta de causa; y (*c*) el no haberse dado lectura a la escritura antes de su otorgamiento. El juez sentenciador, al calificar de débil la prueba, tuvo sin duda en mente que toda la prueba aducida por la demandante pudo ser fácilmente destruída con la declaración del notario autorizante de la escritura y con el testimonio de los demandados

para probar cuándo, cómo y en qué forma se había verificado el pago del precio de la alegada venta. Nada hizo la parte demandada para desvirtuar la evidencia aportada por la demandante para controvertir la presunción de legalidad de la escritura impugnada, y habiendo sido creída esa prueba por la corte sentenciadora es nuestro deber respetar su fallo.

La alegación de la demanda de que la supuesta venta se hizo ''por un precio simulado el cual ni en todo ni en parte ni en ninguna forma fué pagado por la demandada,'' está sostenida por la evidencia. La escritura en la forma en que está redactada (párrafo 2°., supra) no establece presunción alguna en cuanto al pago del precio. Todo lo contrario, la presunción que surge de los hechos del caso y de lo expuesto en el párrafo segundo de la escritura es la de haberse otorgado ésta a título gratuito. Y esa presunción, repetimos, no ha sido controvertida. *Santini Fertilizer Co.* v. *Burgos,* 34 D.P.R. 869; artículo 40, Ley Hipotecaria; Manresa, vol. 8, pág. 755. El notario no da fe de que la entrega del precio se verificase en su presencia. La da solamente de que los vendedores confesaron haberlo recibido en aquel acto. Contra esa alegada confesión está toda la prueba de la demandante y el silencio elocuente del único testigo de los demandados, a quien, no obstante haber sido testigo del otorgamiento de la escritura, nada se le preguntó en cuanto a la entrega del precio.

La corte inferior, teniendo en cuenta que Zeda y la demandante están divorciados, decretó la nulidad de la venta solamente en cuanto a los derechos de la demandante. Es éste un error que puede y debe ser subsanado. Si la escritura es falsa y simulada en cuanto a los derechos de la demandante, debe serlo también en cuanto a todo lo que en ella se dice. *Falsus in uno falsus in omnibus.*

*La sentencia recurrida debe ser modificada en el sentido de declarar nula e inexistente en su totalidad la escritura núm. 86 de 4 de octubre de 1937, otorgada ante el Notario*

602

*Aníbal Boneta, debiendo cancelarse totalmente la inscripción que de la misma se hizo en el Registro de la Propiedad. Y así modificada debe confirmarse con sus pronunciamientos en cuanto a costas y honorarios de abogado.*