FLOR DE MARÍA MONSERRATE, demandante y apelante, *v.* ELÍAS G. LOPÉS, ZENAIDA GARCÍA y CARLOS BALL, HIJO, demandados y apelados.

Número 11553.

*Sometido:* 11 de junio de 1956. *Resuelto:* 20 de junio de 1958.

*Rafael B. Pérez Mercado* y *Benjamín Rodríguez Ramón,* abogados de la apelante; *Quirós Méndez & Quirós Méndez,* abogados del codemandado y apelado Sr. Ball, hijo; *Antonio J. Amadeo,* defensor judicial del demandado apelado Sr. Lopés.

EL JUEZ ASOCIADO SEÑOR BELAVAL emitió la opinión del Tribunal.

Por escritura pública núm. 34 de 22 de julio de 1949 ante el notario señor Octavio Jiménez, doña Flor de María Monserrate le vendió al señor Elías G. Lopés, casado con doña Zenaida García, cierta finca urbana por el precio de $20,000, de los cuales se reservó el comprador $5,085.81 para satisfacer una hipoteca que gravaba dicha propiedad, y el remanente del precio, *confesó la vendedora haberlo recibido de manos del comprador con anterioridad a la fecha del otorgamiento.* Por escritura pública núm. 35 de 23 de julio de 1949 ante el notario señor Octavio Jiménez, don Elías G. Lopés, por sí y como apoderado de su esposa doña Zenaida García, le vendió a don Carlos H. Ball, hijo, la misma propiedad, por el precio de $13,085.81, de los cuales se reservó el comprador $5,085.81, para satisfacer la hipoteca que gravaba dicha propiedad, y el remanente del precio, o sea la cantidad de $8,000 lo entregó el comprador a los vendedores en el acto del otorgamiento. Hay prueba en el sentido que la tasación científica había valorado esta propiedad en $10,280, y el perito señor César Cordero, nombrado por el señor Carlos H. Ball, hijo, para que lo asesorara en la segunda venta, la valoró en $14,000 dólares, (T. I.—53–55; I.I.—66).

No fué hasta el 6 de septiembre de 1949 que se presentó en el Registro de la Propiedad de Río Piedras, la escritura

núm. 35 mediante la cual el señor Carlos H. Ball, hijo, adquirió la propiedad. Observando que la propiedad a esa fecha aparecía inscrita a nombre de doña Flor de María Monserrate, el día 5 de octubre de 1949, el señor Registrador de Río Piedras denegó la inscripción de la venta a favor del señor Ball, hijo, tomando en su lugar la correspondiente anotación preventiva, (T. I.—170-171).

El día 8 de septiembre de 1949 se presentó en el Registro de la Propiedad de Río Piedras, la escritura núm. 34, mediante la cual el señor Elías G. Lopés, adquirió la propiedad de doña Flor de María Monserrate, quedando inscrita dicha propiedad a nombre del señor Elías G. Lopés el 5 de octubre de 1949, (T. I.—171-172).

El día 26 de octubre de 1949 se presentó en el Registro de la Propiedad de Río Piedras una solicitud de anotación de demanda, acompañada de una copia de la misma, en cuya demanda se solicita del tribunal declare nulas las escrituras núm. 34 y 35 del notario don Octavio Jiménez, porque en cuanto a la núm. 34, en el referido traspaso no medió la entrega de dinero, y en cuanto a la núm. 35, dicha venta se efectuó en fraude de acreedores; el comprador señor Carlos H. Ball, hijo, tenía conocimiento de la nulidad y vicios de la supuesta transacción de venta de la demandante, señora Flor de María Monserrate al co-demandado señor Elías G. Lopés; a la fecha de esta última escritura el co-demandado señor Elías G. Lopés era insolvente, hecho que conocía el demandado señor Carlos H. Ball, hijo; y, esta transacción formaba parte de una serie de negocios fraudulentos de los cuales tenía conocimiento y en los que había participado el señor Carlos H. Ball, hijo, (T. I.—172–;L. S.1–2). Dicho aviso de demanda quedó anotado el 25 de noviembre de 1949.

El día 2 de noviembre de 1949 se presentó en el Registro de la Propiedad de Río Piedras, una solicitud de conversión de anotación preventiva, acompañada de la escritura núm. 35 mediante la cual el señor Elías G. Lopés, por sí y como apo-

derado de su señora esposa Zenaida García vendió la propiedad que habían adquirido de doña Flor de María Monserrate a don Carlos H. Ball, hijo, quedando inscrita dicha solicitud de conversión el 29 de noviembre de 1949, pero sujeta al aviso de demanda de que se ha hablado en el párrafo anterior, (T. 172–173).

1. Con relación a la demanda de nulidad por falta de causa, el cuadro que presenta la prueba es el siguiente: (1) en cuanto a la escritura núm. 34, la demandante doña Flor de María Monserrate no había recibido dinero alguno de manos del señor Lopés y su esposa, con anterioridad al momento de su otorgamiento; tampoco resultaba ser dicha doña Flor de María Monserrate deudora de ninguna obligación contraída a favor del señor Lopés, y por el contrario, era el señor Lopés quien resultaba ser deudor de la señora Flor de María Monserrate, según lo demuestra el exhibit III de la demandante, el cual copiado al pié de la letra, dice así:

Agosto 30, 1949

Sra. Flor de María Monserrate
Calle K 69, Urb. Eleanor Roosevelt
Hato Rey, P. R.

Estimada señora:

Permítame decirle que aunque llegaren a usted noticias de que no estoy en mi oficina o que he abandonado la misma, esté tanto usted como su señora madre, su tía y el Sr. Ginorio, que mis compromisos para con ustedes están en pié, no importa que me halle un poco más cerca o un poco más lejos de ustedes.

Hubo en mi negocio de momento una crisis que me crearon algunas personas que tienen relación de negocios conmigo pero que su nivel moral y su sentimiento de humanidad son tan bajos que amenazaron la caída de todo el negocio y hasta con suprimirme. Pero yo me apresuro a dejarles saber para que así se lo comuniquen a los que ya les nombré, que tengan plena confianza en mí, y que, aunque el cumplimiento de mi compromiso para con ustedes no resultare en estricto ajuste en cuanto a fecha y cantidad prometida para los pagos, *no duden ni un momento* que mi resolución de estar en un sitio lejos de mi oficina es, sobre todo, para vivir para aquellos que lo merecen, como

ustedes y evitar que varios desalmados hubieran volcado el negocio a que he dedicado mi vida y hasta mi vida misma.

Le suplico tenga *fe plena* en lo que aquí le dejo saber y dentro de unos días volverá a percibir noticias mías.

*No se desespere. No me escriba.* (La dirección del sobre no es legítima ni verdadera.)

Con mis mas profundo sentimiento de aprecio, quedo,

Muy respetuosamente,

(Firmado)   ELÍAS G. LOPÉS

Nota: Como no pienso escribirle a todas las personas sino a aquellas como usted que lo merecen y que están empezando negocios conmigo, le suplico no decir a nadie que ha recibido esta carta.   (T. II. 66–67)

2. En cuanto a la escritura núm. 35, no hay duda de que la venta realizada por el señor Lopés a don Carlos H. Ball, hijo, fue una venta fraudulenta sobre una propiedad que no le pertenecía al vendedor, por no haber satisfecho el precio de la misma, a la anterior vendedora doña Flor de María Monserrate, y la carta anteriormente transcrita da a entender la existencia de otros acreedores, aunque no merecedores de ninguna explicación por parte del señor Lopés, en cuanto a su extraña desaparición, según lo demuestra la nota o postdata al final de la carta.   Hay prueba de otras operaciones, parecidas a la realizada con la demandante, que examinaremos más adelante, (T. I. 168–197; I. II. 31 *et seq.*).

3. En cuanto a la escritura núm. 35, y sobre el conocimiento que pudiera tener el señor Carlos H. Ball, hijo, de la nulidad y vicios de la supuesta venta entre doña Flor de María Monserrate y el señor Lopés, la demandante declaró que antes de la supuesta venta hecha por ella al señor Lopés, éste la visitó en varias ocasiones, acompañado por otras personas, "casi siempre iba con otro, por lo regular Arístides Lube y otras veces con el señor Ball", (I. II. 61).   Es indudable que la tasación de la propiedad, que por encargo del señor Ball, hijo, llevó a cabo el ingeniero señor Cordero, la hizo antes de celebrarse la venta entre doña Flor de María

Monserrate y el señor Lopés, puesto que la venta entre ellos se realizó el 22 de julio y la venta del señor Lopés a don Carlos H. Ball, hijo, se celebró al día siguiente, 23 de julio y a esas fechas ya estaba hecha la tasación. En esta escritura comparece como testigo el señor Arístides Lube Sierra, quien es una de las personas incluídas en la declaración de la señora Flor de María Monserrate sobre este extremo, (T. lI. 24).

4. En cuanto a la escritura núm. 35, y sobre el estado de insolvencia en que se encontraba el señor Elías G. Lopés, en la segunda carta que éste dirige a la señora Flor de María Monserrate,—exhibit III A de la demandante; (T. II. 69) — descubre un poco más la precaria situación en que se encuentra. Dicha carta dice así:

Sept. 7, 1949

Sra. Flor de María Monserrate
Urb. Eleanor Roosevelt K–69
Hato Rey, Puerto Rico.
Estimada Flor María:—
¡Saludos!

Vuelvo en esta carta a avivar su esperanza en el sentido de que a pesar de no estar cerca de ustedes, ni un momento olvido *los fuertes compromisos contraídos con usted, su mamá, su tía, el señor Ginorio y las demás personas dignas y decentes que pusieron en mí su confianza.* La confusión que causó y estará causando mi ausencia será disipada por su cumplimiento aunque el mismo no se ajuste a la fecha ni a la cantidad convenida.

Le suplico, como en mi anterior carta, no contestar a la dirección que el sobre indica, ni comentar a no ser con las personas que por su conducto me otorgaron su confianza, lo que aquí le indico.

Gracias por todo.

Muy atentamente,

(Fdo.) ELÍAS G. LOPÉS.

(Énfasis provisto.)

Nada hay en la prueba que demuestre que el señor Lopés era un hombre solvente. Por el contrario, lo que demuestra la prueba es que el capital con que manipulaba el señor Lopés

provenía de ciertas propiedades que le traspasaban a él ciertas personas incautas, cuyas propiedades traspasaba a su vez el señor Lopés para levantar fondos, prueba que no fué en forma alguna contradicha.

5. En cuanto a la escritura núm. 35 y sobre la posibilidad de que esta escritura formara parte de una serie de negocios fraudulentos de los cuales tenía conocimiento y en los que había participado el señor Carlos H. Ball, hijo, hay prueba documental que así lo demuestra.   Veamos:

*A.* El día 29 de enero de 1949 y ante el notario don José A. Varona Pacheco, se otorgó la escritura núm. 9, mediante la cual, doña Leyda Nazario Rivera le vendió a don Elías G. Lopés, casado con doña Zenaida García, un solar y casa en la calle San Mateo por el precio de doce mil dólares, de los cuales, los compradores *entregaron en el acto del otorgamiento la suma de dos mil dólares* y los restantes diez mil dólares lo retuvieron los compradores para pagar la hipoteca que gravaba dicha finca.   Esta escritura *se presentó en el Registro de la Propiedad de San Juan el día 8 de febrero de 1949, y quedó inscrita el 9 de febrero de 1949*, (T. I. 188–189, énfasis provisto).

El día 5 de febrero de 1949 y ante el notario don José A. Varona Pacheco, se otorgó la escritura núm. 11, mediante la cual, don Elías G. Lopés y su esposa doña Zenaida García le vendieron con pacto de retro por un año a don Carlos H. Ball, hijo, el solar y casa en la calle San Mateo por el precio de dieciséis mil dólares, de los cuales, los vendedores *confesaron haber recibido con anterioridad al acto del otorgamiento la suma de seis mil dólares* y los restantes diez mil dólares lo retuvo el comprador para pagar la hipoteca que gravaba dicha finca.   Esta escritura *se presentó en el Registro de la Propiedad de San Juan el día 8 de febrero de 1949 y quedó inscrita el 9 de febrero de 1949*, (T. I. 191–193, énfasis provisto).

*B.* El día 15 de marzo de 1949 y ante el notario don José A. Varona Pacheco se otorgó la escritura núm. 15, mediante la cual, don Luis Bayo Deriberprey le vendió a don Elías G. Lopés y a su esposa doña Zenaida García un solar y casa sitos en la Urbanización Dávila y Llenza de Hato Rey por el precio de quince mil doscientos cincuenta dólares que el *vendedor acepta haber recibido con anterioridad al acto del otorgamiento de la escritura. Esta escritura fué presentada en el Registro de la Propiedad de Río Piedras el 22 de agosto de 1949* y quedó inscrita el 5 de octubre de 1949, (T. II. 204–205, énfasis provisto).

El mismo día 15 de marzo de 1949 y ante el notario don José A. Varona Pacheco se otorgó la escritura núm. 16, mediante la cual, don Elías G. Lopés y doña Zenaida García le vendieron con pacto de retro por un año a don Carlos H. Ball, hijo, los mismos solares y casa sitos en la Urbanización Dávila y Llenza, por el precio de diez mil dólares, *que el vendedor acepta haber recibido con anterioridad al acto del otorgamiento de la escritura. Esta escritura fué presentada en el Registro de la Propiedad de Río Piedras el 23 de agosto de 1949* y quedó inscrita el 5 de octubre de 1949, (T. II. 205–207, énfasis provisto).

El 13 de agosto de 1949, y ante el notario don Adolfo Mieres Calimano, se otorgó la escritura núm. 38, mediante la cual, don Elías G. Lopés por sí y como apoderado de su esposa doña Zenaida García hipotecó *el solar y la casa de la Urbanización Dávila y Llenza que ya había vendido* a don Carlos H. Ball, hijo, a doña Carmen Riefkohl por $7,000 por el término de un año, con intereses al ocho por ciento anual. *Esta escritura se presentó en el Registro de la Propiedad de Río Piedras el 18 de agosto de 1949* y originalmente se denegó su inscripción el 3 de octubre de 1949 por estar todavía la propiedad inscrita a favor de don Luis Bayo Deriberprey.

*C.* El día 27 de junio de 1949, y ante el notario don José A. Varona Pacheco, se otorgó la escritura núm. 27, mediante la cual, doña Carmen Torres Córdova le vendió a don Elías G. Lopés, casado con doña Zenaida García, un solar y casa en Santurce por el precio de veinticinco mil dólares que *la vendedora confesó haber recibido con anterioridad al acto del otorgamiento de la escritura.* Esta escritura fué presentada en el Registro de la Propiedad de San Juan el 13 de julio de 1949 e inscrita el 19 de julio de 1949, (T. I. 186, énfasis provisto).

El día 12 de julio de 1949, y ante el notario don José A. Varona Pacheco, se otorgó la escritura núm. 30, mediante la cual, don Elías G. Lopés, por sí y como apoderado de su esposa, le vendió a don Carlos H. Ball, hijo, la misma propiedad, por el precio de nueve mil dólares *recibidos antes del otorgamiento de la escritura.* *Esta escritura fué presentada en el Registro de la Propiedad de San Juan el 23 de agosto de 1949* e inscrita el 31 de agosto de 1949, (T. I. 187, énfasis provisto).

*D.* La cuarta operación escrituraria es la que se realiza entre la demandante doña Flor de María Monserrate y don Elías G. Lopés y entre este último y don Carlos H. Ball, hijo, objeto de esta acción, que hemos reseñado anteriormente.

Cada una de las tres primeras operaciones fueron objeto de una copiosa litigación de nulidad de la cual se tomó razón en el Registro de la Propiedad mediante los correspondientes avisos de demanda que no hemos reseñado en extenso porque todo lo que se nos pide es que tomemos razón de una acción fraudulenta concertada entre el señor Lopés y don Carlos H. Ball, hijo, para rebatir cualquier efecto jurídico de tercero.

■ La prueba es clara en el sentido que el primero que compraba era el señor Lopés, y al día siguiente o unos días más tarde, compraba la misma propiedad el señor Carlos H. Ball, hijo; que los notarios que intervinieron en estas

operaciones eran conseguidos y pagados por el señor Lopés; que el señor Carlos H. Ball, hijo, no intervenía en la investigación de los títulos en el Registro de la Propiedad, (T. II. 44) ; que dichas cuatro ventas no fueron hechas en el curso ordinario del negocio jurídico; que el señor Lopés no pagó por ellas ningún precio; que aunque en la venta de la señora Nazario, el notario da fe que el señor Lopés le entregó a aquélla dos mil dólares en presencia de dicho funcionario, tal entrega fue desmentida por la señora Nazario, sin que su afirmación fuera en alguna forma contradicha, (T. I. 16–18) ; que los títulos no eran presentados en el Registro de la Propiedad a su debido tiempo; que después de vender el señor Lopés al señor Carlos H. Ball, hijo, la casa y solar que el primero había adquirido de don Luis Bayo Deriberprey, el propio señor Lopés aparece hipotecando la misma a doña Carmen Riefkohl, que dos de estas ventas del señor Lopés al señor Ball, hijo, fueron hechas con pacto de retro y las otras dos restantes por un precio de enajenación enteramente inadecuado.

Toda esta manipulación no revela otra cosa que una serie de contratos de préstamos hechos por el señor Carlos H. Ball, hijo, al señor Lopés por el montante figurado del precio de enajenación, garantizados por unas propiedades supuestamente pertenecientes del señor Lopés, o a lo sumo, una manipulación para crear un "tercero mecánico", a los fines registrales correspondientes, por si acaso, las verdaderas dueñas mas tarde reclamaban sus propiedades. Esto explica por qué en la operación entre el señor Lopés y doña Flor de María Monserrate, el 22 de julio de 1949 ésta le vende al señor Lopés una finca urbana por $20,000, y al día siguiente, 23 de julio de 1949, el señor Lopés le vende la misma propiedad al señor Carlos H. Ball, hijo, por $13,085.81; por qué en la primera venta el precio se declara recibido con anterioridad a la fecha del otorgamiento—presunción de enajenación a título gratuito—y en las segunda venta la misma propiedad

se vende por un precio enteramente inadecuado—presunción de causa falsa o ilícita—. Sin embargo, la prueba de los demandados no hace ningún esfuerzo por rebatir estas presunciones, fortalecidas en sus efectos jurídicos por la prueba de la insolvencia del señor Lopés y la prueba de la acción concertada entre el señor Lopés y don Carlos H. Ball, hijo, en ésta al igual que en otras operaciones presentada por la demandante. Si bien existe una presunción legal en favor de la veracidad de los hechos consignados en una escritura pública, tal presunción no es concluyente y puede ser rebatida por la correspondiente prueba de hechos contrarios a los consignados en dicha escritura: *Vázquez* v. *Seda*, 58 D.P.R. 594, (Travieso), (1941), cita precisa a la pág. 599.

La ley aplicable al caso son los siguientes artículos del Código Civil de Puerto Rico: no hay contrato sino cuando concurren los requisitos siguientes: (1) Consentimiento de los contratantes; (2) Objeto cierto que sea materia del contrato; (3) Causa de la obligación que se establezca—art. 1213 (31 L.P.R.A. 127, sec. 3391); en los contratos onerosos se entiende por causa para cada parte contratante, la prestación o promesa de una cosa o servicio por la otra parte; en los remuneratorios, el servicio o beneficio que se remunera, y en los de pura beneficiencia, la mera liberalidad del bienhechor—art. 1226 (31 L.P.R.A. 140, sec. 3431); los contratos sin causa, o con causa ilícita, no producen efecto alguno . . . art. 1227 (31 L.P.R.A. 143, sec. 3432); *la expresión de una causa falsa en los contratos dará lugar a la nulidad,* si no se probase que estaban fundados en otra verdadera y lícita—art. 1228 (31 L.P.R.A. 144, sec. 3433); (Énfasis provisto).

Como se ve, estamos ante un caso claro de nulidad absoluta o radical de un contrato de compraventa por falta de causa, por falta de precio, carente de efectos jurídicos en cuanto a su transmisibilidad: *Guzmán* v. *Guzmán*, 78 D.P.R. 673 (1955), cita precisa a la pág. 677. El hecho de que de-

mande su nulidad una persona culpable indudablemente de la causa de nulidad del contrato no debe entorpecer nuestro razonamiento. Borell, en su tratado sobre la nulidad de los actos jurídicos, al comentar una sentencia del Tribunal Supremo de España, se expresa así: "la de 30 de junio de 1951 que califica de inexistente un contrato de compraventa en que faltó el precio, *falta que califica de causa falsa*, dice que los herederos del vendedor tienen (como tenía su causante) acción para impugnar la apariencia de contrato; siendo de notar en este caso, que el vendedor era culpable indudablemente de la causa de la nulidad del contrato, lo cual no fué obstáculo para que se le concediera acción de nulidad, que transmitió por causa de muerte a sus herederos": Vide: Antonio M. Borell y Soler—Nulidad de los Actos Jurídicos según el Código Civil Español", 103–104 (ed. de la Casa Editorial Bosch de 1947).

El caso es importante porque en él se establece que la acción de nulidad por razón de causa falsa—compraventa sin precio pagado—no debe confundirse con la acción de nulidad por causa torpe, regla segunda del art. 1306 del Código Civil Español (1258 nuestro) pues "no puede afirmarse que la culpa estuviera tan sólo de parte del supuesto vendedor, sin participación alguna del comprador, sino que por el contrario ambos colaboraron en la creación aparente del contrato simuladamente constituído", 200 Jurisprudencia Civil 452–458, cita precisa a la pág. 457 (repertorio de la Revista General de Legislación y Jurisprudencia—Editorial Reus S. A. de 1932). El artículo que hay que aplicar, pues, es el art. 1213 que declara radicalmente nulo o inexistente todo contrato sin causa, y ya sabemos que la característica esencial del contrato nulo es que "no produce efecto jurídico alguno como tal . . . el derecho considera a dicho contrato como no realizado": *Guzmán* v. *Guzmán*, supra, cita precisa a la misma página. Por lo tanto, la acción apropiada es la acción civil ordinaria por nulidad con la cancelación de las ins-

cripciones registrales correspondientes—Sentencia del 30 de junio de 1931 del Tribunal Supremo de España, supra.

■ Independientemente de cualquier hipótesis de acción fraudulenta concertada, habiendo intervenido el señor Carlos H. Ball, hijo, en el supuesto acto de enajenación realizado entre doña Flor de María Monserrate y el señor Elías G. Lopés, y no habiendo adquirido directamente de la persona, que de acuerdo con el Registro, tenía inscrito su derecho a disponer de la propiedad, es claro que no podemos considerar a dicho señor Ball, hijo, como un tercero hipotecario: arts. 27 y 34 de la Ley Hipotecaria de Puerto Rico; *Lizardi v. Caballero*, 65 D.P.R. 83 (Todd, hijo), (1945), cita precisa a la pág. 89; *Olmedo v. Balbín*, 69 D.P.R. 588, (Snyder), (1949), cita precisa a las págs. 592–593. Como bien nos argumenta la ilustrada representación de la demandante, al adquirir esta propiedad en la forma que lo hizo, el señor Carlos H. Ball, hijo, "descansó, no en la fe pública registral, sino en la privada de su antecesor titular". Al resultar nula la enajenación anterior, dicha nulidad alcanza la enajenación posterior.

*Debe revocarse la sentencia apelada y dictarse otra declarando con lugar la acción civil de nulidad y ordenando las cancelaciones correspondientes en el Registro de la Propiedad, con cualesquiera otros pronunciamientos que deba hacer el Tribunal Superior de Puerto Rico, Sala de San Juan, no incompatibles con los términos de esta opinión.*