Isabel Carmen Llambías, por sí y representada por su madre María Bauzá, demandante, contrademandada y apelada, *v.* Juan Carlos Pagán, demandado, contrademandante y apelante.

Núm. 9054.—*Sometido:* Abril 6, 1945. *Resuelto:* Diciembre 4, 1945.

---

452

*Pedro E. Anglade*, abogado del apelante; *José Veray, Jr.*, abogado de la apelada.

EL JUEZ ASOCIADO SEÑOR TODD, JR., emitió la opinión del tribunal.

En 14 de marzo de 1940 la demandante Isabel Carmen Llambías otorgó ante notario una escritura de venta de finca con pacto de retro que en lo pertinente decía:

"Cuarto: Doña Isabel Carmen Llambías en este acto vende al otro compareciente, don Juan Carlos Pagán la finca descrita en el hecho primero de esta escritura con cuanto contiene y le es anexo. Entendiéndose que la venta lleva consigo la transmisión del dominio, posesión y demás accesiones naturales y civiles al inmueble enajenado.—Precio.—Quinto: Que el precio de esta venta lo constituye la suma de un mil quinientos dólares, suma que confiesa la vendedora doña Isabel haber recibido de manos del comprador señor Pagán con anterioridad a este acto, y por cuya cantidad le otorga su más

cumplida y eficaz carta de pago.—Retracto Convencional.—Sexto: Es condición expresa, además, convenido formalmente por las partes comparecientes en este acto, que la venta se efectúa con Retracto Convencional por el término de un año, a contar a partir de la fecha de hoy; de manera que, si doña Isabel Carmen Llambías devuelve al señor Juan Carlos Pagán, la cantidad recibida de un mil quinientos dólares, dentro del referido término de un año, que vence el día catorce de marzo de mil novecientos cuarentiuno, el comprador señor Pagán, deberá y queda obligado, a otorgarle la correspondiente escritura de retroventa, quedando en otro caso, irrevocablemente efectuada la enajenación de la finca vendida.—Séptimo.— Convienen además las partes y así quedan obligadas a lo siguiente: que durante el curso del referido año, que comienza con el otorgamiento de esta escritura hasta el día catorce de marzo de mil novecientos cuarenta y uno, don Juan Carlos Pagán tendrá derecho a percibir las mensualidades que rente la casa enajenada."

Tres días antes de vencer el año especificado en el contrato, o sea, el 11 de marzo de 1941 Isabel Carmen Llambías radicó la demanda en este caso, en la cual solicitó sentencia declarando: (*a*) que la escritura de venta de finca con pacto de retro era nula porque la demandante era menor de edad cuando la otorgó; (*b*) que de ser válida dicha escritura el contrato de que trataba era una hipoteca y no una compraventa; (*c*) que el demandado debía abonar los cánones que por concepto de alquiler de dicha casa había venido recibiendo, a la deuda del capital, después de descontar los intereses legales, y (*d*) el pago de una suma de $5,000 por daños y perjuicios. La corte de distrito declaró sin lugar una excepción previa por indebida acumulación de acciones, y después de contestar el demandado y de practicarse la prueba de ambas partes, dictó sentencia a favor de la demandante, resolviendo que la escritura era válida y que el contrato a que se refería era realmente una hipoteca, fijándole a la demandante un plazo improrrogable de seis meses para satisfacer al demandado la suma de $1,500 más los intereses legales, y condenando a este último a pagar a la demandante los cánones de arrendamiento a razón de $40 men-

suales a partir del 15 de marzo de 1941, las costas y $250 en concepto de honorarios de abogado. El demandado apeló.

En su primer señalamiento sostiene el apelante que la corte inferior erró al admitir la declaración de la demandante para probar que el contrato otorgado por las partes era uno de hipoteca y no de venta con pacto de retro, variándose así con prueba oral, los términos de un contrato escrito en violación del artículo 25 de la Ley de Evidencia.

Hemos resuelto en el caso de *Monagas* v. *Albertucci,* 17 D.P.R. 712, confirmado en 235 U.S. 81, que es admisible prueba oral para poder determinar si la verdadera intención de las partes en una venta con pacto de retro de propiedad inmueble era otorgar ese contrato o simplemente un préstamo con garantía hipotecaria. Dijimos en dicho caso a la pág. 715:

"Todo el caso en realidad gira sobre la cuestión de si el documento escrito objeto de controversia era una hipoteca o una venta condicional. Si es lo segundo, deben cumplirse las condiciones del mismo; si es lo primero, debe permitírsele al demandante que devuelva el dinero recibido haciéndole un traspaso de los bienes. La verdadera intención de las partes en el momento de otorgar el documento escrito, es la que debe regir en la interpretación que le den los tribunales. Esto debe averiguarse de las circunstancias que concurrieron en la transacción y del texto del documento mismo. La norma correcta, en los casos en que tenga aplicación, es la continuación de la existencia de una deuda u obligación entre las partes. De existir tal deuda u obligación, la venta puede considerarse meramente como una garantía de la deuda o como indemnización de una obligación. Por el contrario, si no existe deuda u obligación, entonces la transacción no es una hipoteca y sí meramente una venta con pacto de retracto dentro de un tiempo determinado. Aun cuando cada caso debe contener sus propios hechos especiales, ciertas circunstancias se consideran como importantes, y los tribunales las consideran como aclarando la intención real de las partes y la naturaleza de tales transacciones; tales son la existencia de un contrato colateral ejecutado por el cedente para el pago de dinero al cesionario, su obligación de pagar interés, que el precio de la venta sea inadecuado, que el cedente quede todavía en po-

sesión de los bienes traspasados, y cualquier negociación o solicitud de un préstamo con anterioridad o durante la transacción que dió lugar al traspaso."

Si bien es cierto que en el caso que acabamos de citar se revocó la sentencia de la corte inferior por haber admitido prueba oral en relación con un contrato de compraventa con pacto de retro, el *dictum* que dicha opinión contiene sobre la inadmisibilidad de dicha prueba oral en casos de esta naturaleza quedó aclarado por esta Corte en el caso de *Ochoteco, Jr.* v. *Córdova,* 47 D.P.R. 554, donde a la página 560 dijimos:

"Los apelantes hallan algún alivio en el caso de *Monagas* v. *Albertucci,* 7 D.P.R. 712. Ahora bien, hubo un *dictum* en esa opinión que decía que prueba oral era inadmisible para demostrar que un contrato de compraventa, con pacto de retro, no podía justificarse que fuera una hipoteca. Sin embargo, si se lee con cuidado la opinión se verá que esta corte realmente resolvió que no había suficiente prueba para demostrar la existencia de una hipoteca.

"Esto también se desprende cuando se considera el caso en apelación para ante la Corte Suprema de los Estados Unidos, *Monagas* v. *Albertucci,* 235 U. S. 81, 87, donde la corte, por voz del Juez Asociado Sr. White, dijo lo siguiente:

" 'Mas cuando se considera la relación que del caso hemos hecho, la cuestión descansa en la más palpable errónea apreciación de la actitud de la corte inferior, toda vez que, conforme hemos visto, su conclusión de que la corte inferior cometió error al resolver que el contrato de venta era de hipoteca, no surgió de la resolución de que existía falta de autoridad para admitir cualquier prueba con tal fin, sino del hecho de que el testimonio específico ofrecido y recibido con la objeción de una de las partes, se halló, después de considerarlo y apreciarlo, que no tenía relación legal con tal objetivo y que por ende no presentaba fuerza probatoria alguna tendente a sostener que se variara el contrato.' "

En el caso más reciente de *Nieto* v. *Torres,* 56 D.P.R. 154, en el cual no se admitió prueba oral para demostrar la verdadera naturaleza de la transacción celebrada y en el que un contrato de compraventa con pacto de retro era en rea-

lidad uno de garantía hipotecaria, al revocar la sentencia resolvimos, citando a 2 Jones *on Evidence in Civil Cases,* 4a. ed. (1938), pág. 951, sec. 446, que dicha prueba era perfectamente admisible.

Al mismo efecto, véanse 9 Wigmore *on Evidence* Sec. 2437, pág. 119; *González Franqui* v. *Brice,* 27 D.P.R. 69; *Monrozeau* v. *Amador,* 40 D.P.R. 132, y el caso de *J. W. Pierson Co.* v. *Freeman,* 166 A. 121, 123, donde se discute extensamente la diferencia entre una venta condicional de un inmueble y una hipoteca.

De acuerdo con la doctrina expuesta, somos de opinión que la corte de distrito no erró al admitir el tesimonio de la demandante. Esto constituía una de las excepiones a la regla sancionada por la jurisprudencia, y dicha prueba podía ser admitida sin violar los preceptos del artículo 25 de la Ley de Evidencia.

Ahora bien ¿fué correcta la conclusión de la corte *a quo* de que el contrato otorgado era en verdad una hipoteca y no una venta con pacto de retro? Veamos la prueba aportada por las partes.

La de la demandante consistió de su propio testimonio y del de su madre María Bauzá. La demandante declaró, en síntesis, que a la fecha de la transacción ella era una estudiante de la Universidad de Puerto Rico; que para el mes de marzo de 1940 ella fué donde el demandado a pedirle un préstamo por la suma de $1,500 para con ese dinero comprarle una casa al tío de ella, Antonio Alcover; que la casa rentaba $45 mensuales, sobre los cuales ella y el demandado convinieron que por vivir ella en Río Piedras y el demandado en Lares, éste último cobraría las mensualidades de l casa y descontaría los intereses del préstamo, y que el reo se lo enviaría a Río Piedras; que nunca recibió dichos emanentes; que *compró* la casa el mismo día que otorgó escritura a favor del demandado, por una suma de $1,200 que por dicha escritura lo que ella hizo fué hipotecar la casa por

$1,500 a Juan Carlos Pagán; que previamente había realizado varias gestiones con ciertos prestamistas sin conseguir el dinero; que la planta alta de la casa estaba arrendada a la Corte Municipal por.$25, y la planta baja a ciertos inquilinos por $20. En *rebuttal* declaró que Juan Carlos Pagán *no había aceptado la hipoteca que se le propusiera sobre la casa por $1,200* "porque si tenía que llevar una ejecución entonces tenía que pagarme a mí quinientos pesos de hogar seguro''; que el demandado aceptó una retroventa por $1,500 y que ella aceptó el negocio "porque al cabo era lo mismo''; que en cierta ocasión le hizo al demandado una oferta de pago que éste no aceptó, habiendo ido ella personalmente *"a entregarle mil quinientos pesos para que me devolviera la casa* y él se negó a aceptarlos porque según él la casa era de él''; que el día en que se firmó la escritura recibió de Pagán un cheque por $1,200 y que entonces se fué a Río Piedras, y que al otro día el demandado le entregó un pagaré a un tío suyo que le enviaron a Río Piedras donde su mamá lo firmó; que su madre María Bauzá no estuvo presente cuando se firmó la escritura, y que firmó el pagaré por $300 en Río Piedras.(¹)

María Bauzá declaró que la casa del negocio era originalmente suya y que la había perdido por contribuciones; que su cuñado la había rematado en pública subasta pero que consintió en vendérsela a su hija por $1,200; que supo del negocio cuando su hija regresó de Lares y se lo explicó; que no lo encontró bien "porque nos quitaban las rentas de la casa'', que no estuvo presente al otorgarse la escritura y que el pagaré que aparece con su firma fué firmado por ella en Río Piedras. En *rebuttal* declaró que no conocía a Juan R. Maldonado (testigo que declaró posteriormente haberla visto en Lares el 14 de marzo de 1940).

---

(¹)El pagaré por $300 fué suscrito únicamente por el demandado como deudor. La firma de María Bauzá al dorso se refiere a un abono de $96.52 que hizo el demandado y recibido por ella a nombre de la demandante.

La prueba documental de la demandante consistió del acta de nacimiento de Isabel Carmen Llambías y de copia certificada de la escritura de compraventa a favor de Juana Carlos Pagán.

La parte demandada presentó como testimonio de su primer testigo la declaración original de Salvador Vilella, el notario que otorgó la escritura número 27 de 14 de marzo de 1940, sometiéndose a la corte una estipulación de las partes que de declarar dicho testigo declararía exactamente lo mismo. En síntesis, el testigo había declarado que en la fecha del otorgamiento de la escritura se personaron en su oficina Juan Carlos Pagán, Antonio Alcover Pol, Isabel Carmen Llambías, *María Bauzá* y el Lic. Obdulio Bauzá; que este último le explicó la transacción, la cual era que Isabel Llambías le iba a comprar la casa a Antonio Alcover para luego vendérsela a Pagán con pacto de retro por un año; que las escrituras las llevó Bauzá redactadas a su oficina; que el cheque por $1,200 se lo entregó Pagán a María Bauzá ese día en su presencia; que al día siguiente se presentaron la referida María Bauzá y Juan Carlos Pagán, adelantándole él $96 y entregándole un pagaré por $300, sobre el cual él autorizó un *affidavit; que en ningún momento se habló por alguna de las partes de hipoteca,* manifestando que "si se habla allí de hipoteca yo no autorizo una escritura con pacto de retro aunque hubiese sido hecha por un compañero mío; allí no se habló nada de hipoteca."

Antonio Alcover Pol declaró en lo pertinente que el cheque de $1,200 con el cual le pagaron por la casa le fué entregado el día del otorgamiento de las escrituras en la oficina del notario Vilella estando presente su cuñada María Bauzá; que ella o Vilella—uno de los dos—le entregó el cheque; que cuando María Bauzá le explicó las condiciones de los estudios de su hija, él accedió a venderle la casa; que la casa tenía un valor de $2,500; que no estaba presente cuando Isabel Llambías otorgó la escritura a favor de Pa-

gán; que deducía que el contrato en dicha escritura era una hipoteca; que las dos escrituras fueron redactadas por Obdulio Bauzá, tío de la demandante.

Juan R. Maldonado declaró que había hablado con María Bauzá el día 14 de marzo de 1940 en Lares; que ella le había salido a vender la casa el día antes, y que él le había sugerido que fuera a ver a Pagán; que el día 14 ella le informó que le había vendido la casa a Pagán.

Federico Juan Soler declaró que anteriormente había sido llamado a declarar en una vista en el mismo caso por María Bauzá; que el día 14 de marzo de 1940 vió a la referida María Bauzá en Lares.

El demandado, Juan Carlos Pagán, testificó que María Bauzá y su hija Isabel Carmen Llambías fueron donde él a hipotecarle la casa por $1,200, lo que él rehusó: "... yo le dije que no, que en hipoteca no; que yo lo que podía hacer era comprársela; entonces la señorita dijo, 'pero, mamá, es igual; lo mismo es,' y entonces yo acepté"; que entonces convinieron en una retroventa por $1,500, después de haber pedido ella $1,800 por la casa; que en ningún momento convino con María Bauzá ni la demandante en hacerles un préstamo; que en ningún momento recibió solicitudes de prórroga ni ofertas de pago; que Obdulio Bauzá le había sugerido que habiendo sido la casa de su hermana María se veía mejor que pasara a Isabel Carmen Llambías y de ella a él; que no convinieron nada en cuanto a los cánones; que el negocio lo hizo de buena fe.

Como prueba documental el demandado ofreció el certificado de compra de bienes inmuebles dado por el Colector cuando se remató la propiedad por contribuciones, la escritura número 26 de 14 de marzo de 1940 otorgada por Antonio Alcover Pol y su esposa a favor de Isabel Carmen Llambías, el cheque por $1,200 con que se pagó a Alcover por la casa y el pagaré por $300 que completó la suma de $1,500 entregada a la Llambías por Juan Carlos Pagán.

La corte inferior hizo constar en su opinión que daba "entero crédito al testimonio de la demandante y sus testigos" y que "la declaración del demandado . . . no le ha merecido crédito alguno . . ." Aun cuando en algunos detalles la corte inferior, inconsistentemente con estos pronunciamientos, aparentemente sí dió crédito a la prueba del demandado, el hecho primordial que resalta de toda la prueba es el siguiente: No obstante haber negado el demandado que la demandante le ofreciera pagarle los $1,500 objeto del contrato, antes de vencer el año, el hecho es que la demanda en este caso fué radicada el 11 de mayo de 1941, es decir, tres días antes de vencer el año especificado en el contrato. Este hecho da fuerza a la prueba que tendió a demostrar, no que se trataba de una hipoteca como resolvió la corte inferior, sino que ella trató de ejercitar el derecho de retroventa especificado en el contrato.

Esta Corte por lo general no interviene con la apreciación que de la prueba hace una corte inferior ni con sus conclusiones de hecho a base de dicha apreciación. Empero, el caso de autos presenta una situación distinta. Se trata de una conclusión de derecho al resolver la corte que el contrato en este caso fué uno de hipoteca y no uno de compraventa con pacto de retro.

Existe bastante similitud entre una compraventa con pacto de retro, y una hipoteca;(²) y dentro de la excepción

---

(²) Comenta Manresa:

"Empléase el retracto convencional o venta al quitar o a carta de gracia, que de todas estas maneras se denomina, como forma del contrato de préstamo; pero, jurídicamente es acto bien distinto de éste. Una sola observación pondrá de manifiesto esta diferencia: en la venta con pacto de retracto hay siempre la transmisión del dominio de una cosa, siquiera sea de un dominio revocable; en el préstamo, esa transmisión no existe: aseméjanse los dos actos en que en ambos se transmite dinero, en el préstamo el que se presta, en la compra con pacto de retro el que sirve de precio; pero la transmisión de la cosa determinada, fuera aparte del numerario, sólo se da en la venta.

"No obstante esta diferencia jurídica, sería completamente pueril negar que en la práctica, las ventas con pacto de retro son verdaderos préstamos, a los que se da esa *forma* como podía dárseles la de constitución de crédito hipo-

consignada a la regla de evidencia oral extrínseca, se debe fijar con exactitud cuál fué la intención de las partes al otorgar el contrato. Somos de opinión que una prueba como la de la demandante en este caso, débil y contradictoria, no puede tener el efecto de destruir la veracidad de la escritura suscrita por ella. Su propia prueba en general propendió a demostrar que en varias ocasiones ella estuvo consciente del verdadero acto jurídico que realizaba. Trató de hipotecar y al negarse el demandado, vendió con la esperanza de poder redimir la casa dentro del año.

No vemos cómo la corte pudo resolver que en realidad se trataba de una hipoteca. La evidencia admitida para explicar la transacción no tuvo el efecto de cambiar, variar, o modificar el contrato. No es éste un caso que caiga bajo las disposiciones del artículo 1410 del Código Civil(³) que especifica los casos en los cuales una venta de inmueble se presumirá una hipoteca. Tampoco es uno en que la venta haya surgido como consecuencia de una obligación preexistente. *Monagas* v. *Albertucci,* supra.

¿Qué efecto, si alguno, tuvo el hecho probado de haber la demandante, antes de vencer el año, ofrecido pagar al demandado los $1,500 objeto del contrato y el haber radicado la demanda tres días antes de vencer dicho plazo pero va-

tecario o la de anticresis, por ejemplo: de aquí precisamente surgen los motivos de las censuras que se dirigen contra el retracto convencional hasta el punto de que algunos autores opten decididamente por su supresión.'' *Comentarios al Código Civil,* Tomo X, pág. 271 (Cuarta Edición).

(³)El artículo 1410 del Código Civil lee:

''Toda venta de propiedad inmueble con pacto de retroventa se presumirá que constituye un contrato de préstamo por el montante del precio, con garantía hipotecaria de la finca vendida, en cualquiera de los casos siguientes:

*Primero:* Cuando el comprador no hubiere entrado en posesión material de la cosa vendida.

*Segundo:* Cuando el vendedor pague interés al comprador por el precio de la venta, aunque se denomine canon de arrendamiento o se le dé otro nombre cualquiera.

*Tercero:* Cuando se hiciere figurar en el contrato, como precio de enajenación una cantidad enteramente inadecuada.''

riando su causa de acción? Creemos que ninguno que pueda favorecer a la demandante.

No se trata de un caso en que sea aplicable la doctrina sobre elección de remedios, pues ésta se aplica a las diferentes formas de hacer valer un derecho. Se trata de uno en el que la demandante ejercitó un derecho sustantivo diferente al que realmente tenía. Sobre esto, en 18 *Am. Jur.* 131, *Election of Remedies,* sección 6, se dice:

"§6.—Elección de Derechos Sustantivos.—A menudo lo que se llama en las opiniones judiciales como una elección de remedios es en realidad una elección entre derechos sustantivos. La distinción es una no pocas veces obscurecida, y sin embargo es importante que se tenga en mente. Una elección entre derechos sustantivos va, no a la forma, sino a la sustancia, afectando algún derecho elegido. Mientras que una elección de remedios o forma de acción o procedimiento no envuelve necesariamente una elección entre derechos sustantivos existentes, ya que una forma de acción es nada más que un medio de administrar justicia más bien que una finalidad en sí misma. La doctrina sobre elección de remedios se aplica para proteger a uno de litigios molestosos, mientras que la regla sobre elección de derechos sustantivos se refiere al status verdadero de alguna propiedad o derechos contractuales. Es decir, una persona que tiene la opción de fijar definitivamente un derecho contractual de propiedad sin referencia al consentimiento o deseos de la otra parte a la transacción está sujeto por el ejercicio de la opción."

Este Tribunal ha resuelto que puede concederse un remedio que aparece de la prueba, cuando es compatible con las alegaciones y cuando en el pleito concurren los requisitos necesarios para que proceda. Así, en *Ruiz* v. *Ruiz,* 61 D.P.R. 823, 829, se dijo que "El hecho de que los demandantes hayan titulado su acción 'reivindicación de condominios y pago de frutos' no nos impide resolver que en este caso existe un fideicomiso constructivo, resultando como resulta que dicho remedio es perfectamente compatible con las alegaciones y la prueba." Y en la opinión emitida por el Juez Asociado

Sr. Snyder en *Sosa* v. *Sosa,* 64 D.P.R. 769, 779, copiamos del sumario lo siguiente (en lo que estuvo conforme todo el Tribunal) :

"El hecho de que los demandantes seleccionen erróneamente el título de su acción y el artículo aplicable a ésta no es fatal cuando hay un remedio que puede ser aplicable y en el pleito concurren todos los requisitos necesarios al mismo."

En el mismo sentido está la regla 81(*b*) de las de Enjuiciamiento Civil, la cual dispone:

"(*b*) *Denominación o Súplica Erróneas.*—Cualquier defecto en la denominación de la acción ejercitada o en la súplica del remedio solicitado, no será óbice para que la corte, descartando el error así cometido, conceda el remedio que proceda de acuerdo con las alegaciones y la prueba."

La situación en el caso de autos, sin embargo, es diferente. No podemos conceder a la demandante un remedio que no tiene. El hecho de hacer ella el ofrecimiento de pago antes de vencer el año no equivale, por sí solo, al ejercicio de la acción de retracto. Hay una razón fundamental para ello, y es que el mero ofrecimiento de pago no constituye el ejercicio del derecho de retracto.

El artículo 1396 del Código Civil dispone que:

"Tendrá lugar el retracto convencional cuando el vendedor se reserve el derecho de recuperar la cosa vendida, con obligación de cumplir lo expresado en el artículo 1407, y lo demás que se hubiese pactado."

Y el 1407 dispone a su vez que:

"El vendedor no podrá hacer uso del derecho de retracto sin reembolsar al comprador el precio de la venta, y además:
"1. Los gastos del contrato, y cualquier otro pago legítimo hecho para la venta.
"2. Los gastos necesarios y útiles hechos en la cosa vendida."

Hemos resuelto en los casos de *González* v. *Acha et al.,* 21 D.P.R. 134 y *Martínez* v. *Pirallo,* 61 D.P.R. 91, que el ar-

tículo 1616 de la Ley de Enjuiciamiento Civil para las Islas de Cuba y Puerto Rico, igual al artículo 1618 de la Ley de Enjuiciamiento Civil española, que dispone que para poder dar curso a una demanda de retracto el retrayente debe consignar el precio si es conocido, o si no lo fuère que dé fianza de consignarlo luego que lo sea,([4]) está en vigor en esta jurisdicción. En el caso de autos, no habiendo la demandante consignado en corte los $1,500 objeto del contrato no podía ejercitar la causa de acción sobre retracto y no podemos tampoco nosotros considerar la que ejercitó como tal.

*Por lo expuesto debe revocarse la sentencia dictada por la Corte de Distrito de Aguadilla y dictarse otra declarando sin lugar la demanda, con costas sin incluir honorarios de abogado.*

---

([4]) Véanse los Comentarios de Manresa, ob. cit., págs. 306–309, a este artículo, en relación con el 1518 del Código Civil español equivalente al 1407 del nuestro, supra.