EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Miguelina Delgado Rodríguez; Eduardo F. Rivera Parés<br><br>    Peticionarios<br><br>         vs.<br><br>Sheida Rivera Siverio, Luis Martínez y la Sociedad Legal de Gananciales que ambos componen; Monserrate Rivera Román<br><br>    Recurridos | Certiorari<br><br>2008 TSPR 30<br><br>173 DPR _____ |

Número del Caso: CC-2006-1120

Fecha: 21 de febrero de 2008

Tribunal de Apelaciones:

        Región Judicial de Mayagüez

Juez Ponente:

        Hon. Jorge L. Escribano Medina

Abogado de la Parte Peticionaria:

        Lcdo. Alberto J. Torrado Delgado

Abogado de la Parte Recurrida:

        Lcdo. Santiago Mari Roca

Materia: Sentencia Declaratoria

    Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

Miguelina Delgado Rodríguez;
Eduardo F. Rivera Parés

     Peticionarios

        v.

Sheida Rivera Siverio, Luis        CC-2006-1120
Martínez y la Sociedad Legal
de Gananciales que ambos
componen; Monserrate Rivera
Román

     Recurridos

Opinión del Tribunal emitida por la Juez Asociada señora Rodríguez Rodríguez

San Juan, Puerto Rico, a 21 de febrero 2008

    La presente es una acción declaratoria de simulación en un contrato de compraventa. Como veremos, las partes contratantes en el presente caso crearon la apariencia de un contrato de compraventa mediante el otorgamiento de una escritura a esos efectos. Sin embargo, su verdadera intención no fue comprar y vender un inmueble, sino proveer una garantía para un préstamo personal.

    En segundo lugar, debemos examinar si el referido negocio simulado legitimó la transferencia de la propiedad a terceras personas ajenas al mismo.

    Procedemos a examinar el trasfondo fáctico de la controversia de epígrafe.

## I.

Desde el año 1994 hasta el 2001, la señora Miguelina Delgado Rodríguez (señora Delgado), aquí peticionaria, estuvo casada bajo el régimen de separación de bienes con el señor Eduardo Rivera Parés (señor Rivera Parés). En el año 1997, el señor Rivera Parés solicitó a su abuela paterna, la señora Monserrate Rivera Román (señora Rivera Román), un préstamo de $30,000.00 para realizar ciertas inversiones en los Estados Unidos de América. La señora Rivera Román consintió en prestar el dinero solicitado por su nieto, pero solicitó una garantía de pago. Ante dicho pedido, la señora Delgado accedió a otorgar como garantía un inmueble privativo de su propiedad sito en el Barrio Boquerón del Municipio de Cabo Rojo.

El 18 de noviembre de 1997, la señora Rivera Román emitió un cheque a nombre del señor Eduardo Rivera por la cantidad de $30,000.00. Las partes no acordaron un plazo para el pago del préstamo. Diez días más tarde, el 28 de noviembre de 1997, la peticionaria y la señora Rivera Román otorgaron la escritura número 309 intitulada Compraventa, mediante la cual la señora Delgado "vendió" el solar que radica en Cabo Rojo a la señora Rivera Román por el precio de $12,000.00. Según surge de los testimonios de las partes en el juicio en su fondo y de los diversos documentos judiciales que obran en autos, las partes acordaron que una vez se saldara el préstamo, la señora Rivera Román le "vendería" de vuelta la propiedad a la peticionaria mediante la

correspondiente escritura pública. Según admitió la peticionaria en el juicio, ella nunca inscribió la referida escritura de compraventa en el Registro de la Propiedad. *Véase* apéndice del recurso de *certiorari*, págs. 237-38.

Transcurridos varios años, la señora Delgado y el señor Eduardo Rivera pagaron la suma de $15,000.00, adeudando así la cantidad de $15,000.00. Luego de intentar cobrar la deuda sin éxito, la señora Rivera Román vendió la propiedad en controversia a su nieta, la señora Sheila Rivera Siverio y al esposo de esta última, el señor Luis Martínez (esposos Martínez-Rivera). Dicha compraventa se realizó el 10 de marzo de 2000 por el precio de $15,000.00.

El 12 de julio de 2001, tras conocer de la referida venta, la peticionaria presentó demanda sobre sentencia declaratoria, accesión y daños en contra de los esposos Martínez-Rivera. En esencia, alegó que era dueña del solar en controversia, que la escritura de compraventa otorgada entre ella y la señora Rivera Román fue una simulada con el compromiso de que una vez se pagara el préstamo la señora Rivera Román otorgaría otra escritura para traspasar nuevamente la propiedad a su nombre y que los esposos Martínez-Rivera, con conocimiento del hecho que el solar le pertenecía a ella, convencieron a la señora Rivera Román para que les vendiera el inmueble por debajo de su justo valor en el mercado.

En su demanda, la señora Delgado solicitó que el Tribunal de Primera Instancia declarara nula, simulada,

ilegal y sin causa la escritura de compraventa otorgada entre ella y la señora Rivera Román. Además, solicitó que se declarase que los esposos Martínez-Rivera adquirieron el inmueble de quien no era dueño, por lo que no tienen derecho propietario sobre el mismo. Finalmente, reclamó la accesión de las estructuras construidas en el solar y la correspondiente indemnización por los daños y perjuicios sufridos a raíz de la privación de su propiedad.

Así las cosas, en el mes de diciembre de 2001, la peticionaria presentó demanda enmendada para incluir a la señora Rivera Román como parte demandada y al señor Rivera Parés como demandante. Pendiente el pleito ante el Tribunal de Primera de Instancia, los esposos Rivera-Martínez constituyeron un pagaré hipotecario y enajenaron el inmueble a terceras personas por la suma de $50,000.00.

El 17 de febrero de 2005, tras celebrar el juicio en su fondo, el Tribunal de Primera Instancia dictó sentencia a favor de la demandante-peticionaria y condenó a los co-demandados a pagar solidariamente la cantidad de $45,000.000.[1] El foro primario entendió probado que la señora Rivera Román concedió a los demandantes un préstamo condicionado a que se le otorgara una garantía y que luego ella incumplió el acuerdo con los demandantes al enajenar el inmueble dado en garantía, acto que les irrogó daños.

---

[1] Las partes estipularon que el valor del inmueble era $60,000.00  Por tanto, la cantidad de $45,000.000 equivale al valor del inmueble luego de descontados los $15,000.00 que la demandante-peticionaria le adeudaba a la señora Rivera Román.

Además, determinó que los esposos Martínez-Rivera respondían de forma solidaria por los daños sufridos por la demandante-peticionaria puesto que, con pleno conocimiento de los acuerdos habidos entre ella y la señora Rivera Román, adquirieron la propiedad y luego la vendieron a unas terceras personas. En fin, el foro primario le impuso responsabilidad a la señora Rivera Román por incumplir el contrato de préstamo que tenía con los demandantes y a los esposos Martínez-Rivera por adquirir la propiedad por una suma menor al valor de la misma en el mercado, aun cuando conocían que estaban adquiriendo de quien *no era dueña* del inmueble.[2]

Inconformes, los esposos Martínez-Rivera recurrieron al Tribunal de Apelaciones. Dicho tribunal revocó la sentencia apelada y declaró sin lugar la demanda. En primer lugar, el foro apelativo intermedio determinó que la causa de acción presentada en contra de los esposos Martínez-Rivera estaba prescrita. Entendió que la misma era una de índole extracontractual y que se presentó un año y cuatro meses después de que la demandante-peticionaria advino en conocimiento de la compraventa entre la señora Rivera Román y

---

[2] Luego de dictada la sentencia, el foro primario emitió una sentencia enmendada *nunc pro tunc* en la que eliminó una nota al calce que se refería a una declaración jurada de la señora Rivera Román que había sido suprimida. *Véase* apéndice del recurso de *certiorari*, págs. 185-90. También corrigió un error tipográfico en la parte dispositiva de la sentencia. *Id.* Además, el Tribunal de Primera Instancia emitió una resolución denegando varias mociones de reconsideración presentadas por los demandados. En la resolución reiteró su conclusión a los efectos de que en el presente caso se configuró un contrato de préstamo con garantía y concluyó que no estaba prescrita la reclamación presentada en contra de los esposos Martínez-Rivera. *Véase id*, págs. 174-83.

los esposos Martínez-Rivera.  En segundo lugar, el Tribunal de Apelaciones resolvió que el contrato de compraventa fue uno simulado y que en realidad el negocio entre las partes fue un contrato de garantía hipotecaria.  Al validar el contrato de garantía hipotecaria, el Tribunal de Apelaciones indicó que la señora Rivera Román ejerció el derecho que su contrato le confería y que ésta enajenó la propiedad para recuperar el dinero que se le adeudaba.

Insatisfecha con la determinación del Tribunal de Apelaciones, la señora Miguelina Delgado acudió ante nosotros mediante recurso de *certiorari.*  Alega que erró el Tribunal de Apelaciones al determinar que la presente reclamación es una de índole extracontractual puesto que se trata de una acción declarativa de simulación contractual.  Además, aduce que erró el Tribunal de Apelaciones al validar el contrato disimulado como uno de garantía hipotecaria, aun cuando el mismo no consta inscrito en el Registro de la Propiedad.

Por otro lado, alega la peticionaria que la actuación del foro apelado de validar la enajenación hecha por la señora Rivera Román en virtud de que se trató de un contrato de garantía hipotecaria, tiene el efecto de burlar la prohibición del pacto comisorio contenida en el artículo 1780 del Código Civil de Puerto Rico, 31 L.P.R.A. sec. 5048.  En vista de que la posterior enajenación del inmueble hace impráctica la reivindicación del mismo, la señora Miguelina Delgado solicita que reinstalemos la sentencia del Tribunal

de Primera Instancia que le concedió la cantidad de $45,000.00 como indemnización.

El 16 de febrero de 2007 expedimos el auto de *certiorari*. Con el beneficio de los alegatos de la peticionaria y de los esposos Martínez-Rivera, procedemos a resolver.

## II

Como asunto de umbral, debemos determinar cuál es la verdadera naturaleza de la causa de acción que nos ocupa. Es menester advertir que la demandante-peticionaria instó demanda contra la señora Rivera Román y contra los esposos Martínez Rivera. En cuanto a la reclamación en contra de la señora Rivera Román, los hechos antes reseñados demuestran que se trata de una reclamación de simulación contractual. Sin embargo, existe controversia sobre si la causa de acción de la peticionaria frente a los recurridos es una de índole extracontractual. Comenzamos analizando este asunto.

En el presente caso, el Tribunal de Apelaciones determinó que la causa de acción incoada en contra de los recurridos era una de carácter extracontractual. Amparado en el hecho que la peticionaria reconoció que se enteró de la venta hecha a los recurridos varios días después de que se otorgó la escritura el 10 de marzo de 2000, el Tribunal de Apelaciones determinó que la reclamación instada el 12 de julio de 2001 contra los esposos Martínez-Rivera estaba prescrita para esa fecha. Así, desestimó la causa de acción en cuanto a los recurridos.

Por su parte, los recurridos aducen en su comparecencia que la reclamación presentada en su contra no es una de incumplimiento de contrato pues ellos no formaron parte de los acuerdos habidos entre la peticionaria y la señora Rivera Román. En todo caso, alegan que de entenderse que ellos conocían los acuerdos entre la peticionaria y la señora Rivera Román, su responsabilidad sería por interferencia torticera con un contrato entre terceros.

Contrario a la determinación del Tribunal de Apelaciones y a las alegaciones de los recurridos, entendemos que el hecho que los esposos Martínez-Rivera reclamen ser terceros ajenos al contrato simulado, no convierte el reclamo presentado en su contra en uno de carácter extracontractual. De igual modo, el hecho que la reivindicación del inmueble no sea posible porque los esposos Martínez-Rivera lo enajenaron, no implica que su responsabilidad esté predicada en una acción de daños y perjuicios extracontractuales.

Un examen de la demanda presentada en contra de los esposos Martínez-Rivera revela que la peticionaria alegó que la compraventa concertada con la señora Rivera Román era nula y que los recurridos no tenían la condición de terceros registrales pues adquirieron la propiedad a sabiendas de que no le pertenecía a la señora Rivera Román. Esta reclamación, por tanto, lleva ínsita una acción de nulidad del título de la señora Rivera Román y, por consiguiente, del título de los esposos Martínez-Rivera.

De lo anterior se deduce que estamos ante una acción real sobre un bien inmueble. La causa de acción incoada en contra de los esposos Martínez-Rivera está relacionada a la existencia de un derecho de propiedad sobre un bien inmueble. Es, por tanto, una acción que está sujeta a un término prescriptivo de 30 años. Art. 1863, Cód. Civ. P.R., 31 L.P.R.A. sec. 5293. A la luz de esta determinación, forzoso es concluir que erró el Tribunal de Apelaciones al resolver que la acción incoada contra los esposos Martínez-Rivera es una de naturaleza extracontractual que estaba prescrita al momento de su presentación.

Aclarada la naturaleza de la presente acción, procedemos a examinar las controversias ante nuestra consideración.

## III

### A

En esencia, nos corresponde realizar dos determinaciones medulares. Primero, debemos examinar la alegación de la peticionaria sobre la existencia de un contrato de compraventa simulado. A raíz de esta petición, debemos constatar si la intención de las partes al contratar fue en efecto la de vender y comprar, o si, por el contrario, el contrato de compraventa otorgado en este caso tuvo el propósito de encubrir un contrato de préstamo en garantía. En segundo término, debemos evaluar la alegación de los esposos a los efectos de que la prueba desfilada en juicio demostró que son terceros de buena fe a quienes la presente acción no debe afectar.

Veamos la normativa aplicable a la alegación de simulación contractual.

**B**

Según intimamos, la presente acción se desenvuelve en el ámbito de la simulación de la causa en un contrato de compraventa. Como sabemos, la causa es un elemento constitutivo de todo contrato. Art. 1227, Cód. Civ. P.R., 31 L.P.R.A. sec. 3432. La causa debe existir y debe ser lícita. Art. 1227, Cód. Civ. P.R., 31 L.P.R.A. sec. 3432. Es decir, no puede ser contraria a las leyes o a la moral. *Id. Véase Sánchez Rodríguez v. López Jiménez*, 116 D.P.R. 172, 181 (1985).

Sin embargo, el requisito de que medie una causa contractual no impide reconocerle validez a un contrato que posea una causa falsa, entendida como una causa fingida o que encubre otra verdadera. *Véase* J. Puig Brutau, *Fundamentos de Derecho Civil*, Barcelona, Bosch, 1988, Tomo II, Vol. I, pág. 442. *Véase además* M. Carcaba Fernández, *La simulación en los negocios jurídicos*, Barcelona, Bosch, 1986.

Como ejemplo de ello, el Código Civil preceptúa que "[l]a expresión de una causa falsa en los contratos dará lugar a la nulidad, si no se probase que estaban fundados en otra verdadera y lícita". Art. 1228, Cód. Civ. P.R., 31 L.P.R.A. sec. 3433. Sobre la base de este principio estatutario, le hemos conferido validez a un contrato simulado que exprese una causa falsa, siempre que se pruebe

que el negocio encubre una causa verdadera y lícita. *Véase Reyes v. Jusino*, 116 D.P.R. 275, 284 (1985).

En esencia, "[l]a simulación implica una contradicción entre la voluntad interna y la voluntad declarada. De esta contradicción nace un negocio jurídico que se califica de aparente". L. Diez Picazo & A. Gullón, *Sistema de Derecho Civil*, 4ta ed., Madrid, Tecnos, 1984, Vol II, pág. 79. Siguiendo al comentarista italiano Francisco Ferrara, Diez Picazo y Gullón indican que en un negocio simulado concurren las siguientes características: "a) una divergencia querida y deliberadamente producida entre la voluntad y su manifestación; b) un acuerdo simulatorio entre las partes…; y 3) un fin de engaños a los terceros extraños al acto". *Id., Véase además,* F. Ferrara, *La simulación de los negocios jurídicos*, trads. Rafael Atard & Juan A. de la Puente, 3era ed., Editorial Revista de Derecho Privado, Madrid, 1953, págs. 44-49.

Al enfrentar supuestos de simulación contractual, hemos reconocido la existencia de dos tipos de simulación: la relativa y la absoluta. En la absoluta, las partes crean la apariencia de un negocio jurídico, pero en realidad no realizan un negocio real. *Díaz García v. Aponte Aponte*, 125 D.P.R. 1, 10 (1989). En este tipo de simulación las partes no alteran la situación jurídica anterior. *Véase,* J. Puig Brutau, *Fundamentos de Derecho Civil, op. cit.,* Tomo II, Vol. I, págs. 442-45.

Por otra parte, "la simulación relativa consiste en disfrazar un acto: en ella se realiza aparentemente un negocio jurídico, queriendo y llevando a cabo en realidad uno distinto. Los contratantes concluyen un negocio verdadero, que ocultan bajo una forma diversa, de tal modo que su verdadera naturaleza permanezca secreta". F. Ferrara *op. cit.*, pág. 205. De esta forma, "bajo la falsa apariencia se encubre un negocio realmente querido que los contratantes desean sustraer de la curiosidad e indiscreción de terceros". *Díaz García v. Aponte Aponte*, *supra*. *Véase además Martínez v. Colón Franco, Concepción,* 125 D.P.R. 15, 25 (1989); *Hernández Usera v. Srio. de Hacienda,* 86 D.P.R. 13, 18 (1963).

## C

Sobre la naturaleza de una acción declarativa de simulación contractual como la que nos ocupa, es menester señalar que la misma tiene como fin desvelar la simulación e imprimirle validez jurídica al contrato verdadero y disimulado, siempre que concurran los elementos necesarios para su validez. Mediante esta acción judicial, se pretende aclarar la divergencia entre la verdadera voluntad de las partes y la expresada en el negocio jurídico aparente. Según indica Puig Brutau, en un caso de simulación relativa "la acción se dirigirá, en primer lugar, a obtener la declaración de la falsedad del contrato aparente o simulado, y en segundo lugar, aunque simultáneamente, a la declaración de que existe otro contrato, oculto o disimulado, cuya validez o nulidad

deberá quedar establecida en la sentencia". P. Brutau, *op. cit.* Tomo II, Vol. I, pág. 450.

En virtud de la condición declarativa de esta acción de simulación, la doctrina sostiene que las partes que han participado en la simulación tienen legitimación para levantarla en el foro judicial puesto que mediante ella persiguen validar su verdadera intención. *Véanse id.,* págs. 450-51, Diez Picazo & Gullón, *op. cit.,* págs. 81-82; M. Carcaba*, op. cit., pág.* 67. Habida cuenta de que la acción para declarar la simulación procura hacer efectiva la realidad jurídica frente a una realidad aparente que nunca ha existido, la doctrina civilista postula que la misma no prescribe. *Véanse* Puig Brutau, *op. cit.,* Tomo II, Vol. I, pág. 452, Diez Picazo & Gullón, *op. cit.,* págs. 83; F. Ferrara, *op. cit.,* págs. 406-08.[3]

En términos probatorios, le corresponde a quien impugna el negocio, presentar prueba tendente a establecer la simulación. Así, una vez establecida la simulación o la existencia de un contrato simulado, "se crea[] una presunción absoluta contra el negocio disimulado que compete al gestor rebatir mediante la existencia de una causa verdadera y lícita". *Reyes Jusino, supra*, pág. 284.

En pronunciamientos anteriores hemos puntualizado la dificultad probatoria de establecer la simulación. *Díaz García v. Aponte Aponte, supra,* pág. 11. Ello, en vista de

---

[3] Sin embargo, el transcurso del tiempo podría causar que el derecho invocado se extinga por prescripción. *Véanse* Puig Brutau, *op. cit.,* Tomo II, Vol. I, pág. 452; F. Ferrara, *op. cit.,* págs. 407-08.

que la simulación implica la existencia de un negocio fingido y otro verdadero. Tradicionalmente, la contradeclaración se perfila como el medio de prueba que recoge la voluntad real de las partes. *Veáse Reyes Jusino, supra,* págs. 284-85. "La contradeclaración refleja la verdadera intención … [de la partes], mostrando o que un contrato no ha existido o que existió otro diferente o entre personas distintas". F. Ferrara, *op cit.,* pág. 369. Indudablemente entonces, la prueba de simulación se facilita cuando existe un documento que recoja la contradeclaración. *Véanse id.,* Puig Brutau, *op. cit.,* Tomo II, Vol. I, pág. 453.

Sin embargo, en un caso como el presente en el que no existe el referido documento, la doctrina española acepta que las partes pueden acudir a cualquier medio de prueba, incluyendo la prueba oral. Puig Brutau, *op. cit.,* Tomo II, Vol. I, pág. 453, M. Cárcaba, *op. cit,* pág. 126. En este sentido, al adjudicar acciones de simulación contractual presentadas por terceras personas que no han participado del contrato simulado, hemos indicado que el promovente de la acción puede valerse de presunciones y prueba testifical para cumplir con su carga probatoria. *Díaz García v. Aponte Aponte, supra,* pág. 12. Sobre ello, debemos recordar que en materia general de la prueba de las obligaciones, el Código Civil dispone que "[l]a prueba de testigos será admisible en todos los casos en que no se halle expresamente prohibida". Art. 1198, Cód. Civ. P.R., 31 L.P.R.A. sec. 3331. Por tanto, ausente una prohibición expresa, nada impide en nuestro

ordenamiento recibir prueba oral sobre la simulación en un caso en el que un contratante levanta la nulidad del negocio. Además, no podemos olvidar que la prueba oral es admisible para determinar la verdadera intención de las partes en un contrato. *Llambías v. Pagán,* 65 D.P.R. 451 (1945).

De igual forma, es menester señalar que la admisión judicial o extrajudicial del demandado mediante la cual éste reconoce la existencia de un negocio simulado y aparente, es un medio probatorio eficaz para establecer la simulación contractual y rebatir la presunción de existencia de causa en el negocio aparente o simulado.

Finalmente, es importante aclarar que el hecho que el contrato impugnado por simulación se consigne en una escritura pública no nos impide declarar su simulación pues, "[s]i bien existe una presunción legal a favor de la veracidad de los hechos consignados en una escritura pública, tal presunción no es concluyente y puede ser rebatida por la correspondiente prueba de hechos contrarios a los consignados en dicha escritura". *Monserrate v. Lopés*, 80 D.P.R. 491, 501 (1958).

A la luz de esta normativa, procedemos a examinar si nos encontramos ante un supuesto de simulación contractual.

**IV**

Los hechos que dan base a la presente controversia demuestran que la misma surge de un acuerdo concertado entre familiares. En el año 1997, la señora Rivera Román le concedió un préstamo de $30,000.00 a su nieto, el señor

Rivera Parés. Unos días más tarde, la señora Miguelina Delgado, entonces esposa del señor Rivera Parés, otorgó una escritura pública en la que se hizo constar que ella le vendía un solar sito en Cabo Rojo a la señora Rivera Román. Transcurridos varios años desde que se otorgó la referida escritura, la señora Rivera Román vendió el inmueble a los esposos Martínez-Rivera, aquí recurridos. Ante dicho traspaso de titularidad, la señora Miguelina Delgado instó la presente reclamación.

Luego de examinar los hechos antes relatados, entendemos que nos encontramos ante un contrato simulado. Se trata de una simulación en la naturaleza del contrato, puesto que las partes simularon otorgar un tipo contrato cuando en realidad celebraron uno distinto. *Véase Martínez v. Colón Franco, supra*, pág. 26. Tanto la transcripción de la prueba oral como los documentos que acompañan el presente recurso, demuestran que las partes no otorgaron un contrato de compraventa, sino un contrato de garantía personal. En armonía con el principio civil de la autonomía de la voluntad en la contratación que rige en nuestra jurisdicción, Art. 1207, Cód. Civ. P.R., 31 L.P.R.A. sec. 3372, procede conferirle validez jurídica a este negocio jurídico de garantía personal.[4] Veamos la prueba que sustenta esta conclusión.

_____

[4] La peticionaria nos solicita negarle validez jurídica al negocio de garantía pues entiende que se trata de una hipoteca que carece de existencia jurídica porque no se inscribió en el Registro de la Propiedad. Sobre este argumento, basta señalar que el principio de libertad de

Al testificar en la vista en su fondo, la señora Miguelina Delgado y el señor Rivera Parés establecieron que acordaron otorgarle a la señora Rivera Román el solar en garantía en consideración al préstamo de $30,000.00 que ella les había concedido. Una vez saldado el préstamo, la señora Rivera Román les devolvería el inmueble. Del testimonio de la peticionaria, el cual no fue contradicho en este respecto, también se deduce que fue el notario autorizante de la escritura quien les sugirió denominar la escritura como una de compraventa. Además, surge del testimonio de la peticionaria que en el acto de compraventa no medió el pago de la suma de $12,000.00 que se estipuló como precio. Por otro lado, en la conferencia con antelación al juicio, la señora Rivera Román aceptó que le concedió un préstamo a su nieto y que como garantía de pago se otorgó la escritura de compraventa en la que ella figura como compradora del solar sito en Cabo Rojo. *Véase* apéndice del recurso de *certiorari*, pág. 59.

La prueba antes detallada sostiene la determinación del Tribunal de Primera Instancia de que en este caso las partes no tuvieron la intención de comprar y vender un inmueble, sino que su verdadero propósito fue garantizar el préstamo preexistente. Por tanto, la alegada transmisión de la

---

contratación recogido en el artículo 1270 de nuestro Código Civil, 31 L.P.R.A. sec. 3372, admite cualesquiera pactos que no sean contrarios a la ley, la moral y el orden público. Por tanto, nada en nuestro ordenamiento nos obliga a negarle validez al contrato de garantía. Claro está, reconociendo que no se trata de una garantía real como sería la hipoteca, sino de una garantía personal.

propiedad mediante escritura pública sólo perseguía la devolución del préstamo de $30,000.00. Además, el negocio de compraventa no se perfeccionó pues no medió el pago de los $12,000.00. La ausencia de este elemento característico de la compraventa, demuestra entonces que se trató de un contrato simulado. *Véase Reyes v. Jusino*, *supra*, en la pág. 285. En virtud de ello, es menester concluir que la compraventa fue simplemente un caparazón que encubrió el negocio de préstamo con garantía personal.

Desenmascarado el negocio simulado, nos corresponde imprimirle validez jurídica al negocio disimulado de garantía. En virtud de este negocio, la señora Rivera Román advino acreedora y tenía a su favor una garantía de pago. Es decir, este negocio no la convirtió en dueña del inmueble puesto que no procede admitir la garantía como causa en un contrato de compraventa. Por tanto, la señora Rivera Román no tenía la potestad de transmitir el dominio de la propiedad a terceras personas, aun ante el hecho que sus deudores incumplieron con su obligación de pago.

Reconocer que la señora Rivera Román podía enajenar la propiedad dada en garantía equivaldría a sancionar el pacto comisorio que nuestro ordenamiento rechaza. *Véanse* Arts. 1758 y 1780, Cód. Civ. P.R., 31 L.P.R.A. secs. 5003 y 5048. Como sabemos, en el caso de la prenda y de la hipoteca, nuestro Código Civil le prohíbe al acreedor apropiarse de la cosa dada en garantía ante el incumplimiento del contrato garantizado. *Id.* Aun cuando somos conscientes de que la

prohibición del pacto comisorio sólo aplica por mandato expreso a la prenda y a la hipoteca, entendemos que dicho precepto se debe extender por analogía al negocio que nos ocupa. *Véase* STS español, 22 de diciembre de 1998, Aranzadi núm. 9748. Al igual que ocurre con la hipoteca y la prenda, el negocio realizado por las partes en este caso persiguió garantizar una obligación principal. Por tanto, no podemos permitir que la acreedora en el presente caso se apropie del bien dado en garantía.

Habida cuenta de lo anterior, resolvemos que la señora Rivera Román tenía la obligación de recurrir a los tribunales de justicia para hacer valer su acreencia. En vista de que enajenó un inmueble cuyo dominio no le pertenecía, erró el Tribunal de Apelaciones al validar la referida transacción. Como corolario de ello, resolvemos que actuó correctamente el Tribunal de Primera Instancia al dictar sentencia en su contra condenándola a pagar una suma de dinero equivalente al valor estipulado del inmueble, previo el descuento de los $15,000.00 que la peticionaria le debía en concepto del contrato de préstamo.

Esta determinación, sin embargo, no dispone de la totalidad de la controversia ante nuestra consideración, pues nos resta examinar si los esposos Martínez-Rivera son terceros adquirentes de buena fe a quienes la presente acción no debe afectar.

**V**

Luego de escuchar el testimonio de la señora Miguelina Delgado y los respectivos testimonios de los esposos Martínez-Rivera, el Tribunal de Primera Instancia determinó que éstos conocían las condiciones del contrato de préstamo existente entre la peticionaria y la señora Rivera Román. A raíz de ello, determinó que los esposos Martínez-Rivera eran solidariamente responsables por el pago del valor del inmueble en controversia. Es decir, el foro primario le brindó entera credibilidad a la peticionaria quien testificó que se comunicó vía telefónica con la señora Sheila Rivera para informarle los términos de su acuerdo con la señora Rivera Román. En ausencia de pasión, perjuicio, parcialidad o error manifiesto del tribunal de instancia, no debemos intervenir con esta determinación de hechos del foro primario, ni con su apreciación de la prueba desfilada en el juicio en su fondo. *Véanse Lugo Ortiz v. Mun. de Guayama,* res. 29 de octubre de 2004, 2004 T.S.P.R. 166, 163 D.P.R.__; *Trinidad García v. Chade*, 153 D.P.R. 280, 291 (2001).

Sobre la base de la anterior determinación de hecho a la que le debemos deferencia, es menester concluir que los recurridos no son terceros registrales pues no poseían la referida buena fe al adquirir el inmueble en controversia. Como sabemos, toda persona que adquiera de buena fe y a título oneroso algún derecho de quien en el registro aparezca con facultad para transmitirlo, será protegida en su adquisición una vez inscriba su título en el Registro de la

Propiedad. Art. 105, Ley hipotecaria y del registro de la propiedad, 30 L.P.R.A. sec. 2355; *Banco de Santander v. Rosario Cirino,* 126 D.P.R. 591, 603-04. Así, el tercero recibe la protección de la buena fe registral, aun cuando se invalide el título del transferente, siempre que las causas de nulidad no surjan expresamente del registro.

Además, según se deduce de lo anterior, por mandato de nuestra Ley hipotecaria el tercero debe poseer buena fe al momento de adquirir para ser acreedor de la protección provista por la fe pública registral. Esta buena fe, a su vez, consiste en *"el desconocimiento*, por parte del tercer adquirente, de la inexactitud del Registro". *Id.,* pág. 605 (cita omitida).

Como indicamos, la prueba aquilatada por el Tribunal de Primera Instancia en el presente caso estableció que los esposos Martínez-Rivera conocían la naturaleza de los acuerdos habidos entre la peticionaria y la señora Rivera Román. Más aún, el foro primario determinó que la señora Sheila Rivera era consciente de que la peticionaria era la verdadera dueña del inmueble. Este conocimiento sobre el defecto en el título de la señora Rivera Román, priva a los recurridos de la condición de terceros adquirentes de buena fe. Por tanto, la presente acción les perjudica, aun cuando hayan inscrito su título en el Registro.

Establecida la nulidad del título de la señora Rivera Román, no hay duda de que la transmisión a los esposos Martínez-Rivera también adolece de nulidad. Éstos no

adquirieron su título de la verdadera dueña de la propiedad y carecen de la protección provista por la fe pública registral. No siendo los esposos Martínez-Rivera terceros registrales como reclaman, es menester concluir que responden frente a la demandante-peticionaria.

Finalmente, a la luz de la alegación que el notario autorizante de la escritura de compraventa, el licenciado Luis A. Arroyo Vázquez, indujo a las partes a otorgar una escritura de compraventa simulada, procede remitir el expediente del presente caso a la Oficina del Procurador General para que tome la acción correspondiente.

Por los fundamentos antes expuestos, procede revocar la sentencia del Tribunal de Apelaciones y reinstalar la sentencia del Tribunal de Primera Instancia.

Se dictará sentencia de conformidad.


                                        Anabelle Rodríguez Rodríguez
                                             Juez Asociada

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Miguelina Delgado Rodríguez;
Eduardo F. Rivera Parés

    Peticionarios

        v.

Sheida Rivera Siverio, Luis         CC-2006-1120
Martínez y la Sociedad Legal
de Gananciales que ambos
componen; Monserrate Rivera
Román

    Recurridos

SENTENCIA

San Juan, Puerto Rico, a 21 de febrero 2008

Por los fundamentos expuestos en la Opinión que antecede, los cuales se incorporan íntegramente a la presente, se revoca la sentencia dicta por el Tribunal de Apelaciones y se reinstala en su lugar la sentencia del Tribunal de Primera Instancia.

Así lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal. El Juez Asociado señor Rivera Pérez no intervino.

Aida Ileana Oquendo Graulau
Secretaria del Tribunal Supremo