La Juez Asociada Señora Rodríguez Rodríguez
emitió la opi-nión del Tribunal.
La presente es una acción declaratoria de simulación en un contrato de compraventa. Como veremos, las partes contratantes en el presente caso crearon la apariencia de un contrato de compraventa mediante el otorgamiento de una escritura a esos efectos. Sin embargo, su verdadera intención no fue comprar y vender un inmueble, sino pro-veer una garantía para un préstamo personal.
En segundo lugar, debemos examinar si el referido ne-gocio simulado legitimó la transferencia de la propiedad a terceras personas ajenas al mismo.
Procedemos a examinar el trasfondo fáctico de la contro-versia de epígrafe.
} — !
Desde 1994 hasta el 2001, la señora Miguelina Delgado Rodríguez (señora Delgado), aquí peticionaria, estuvo ca-sada bajo el régimen de separación de bienes con el señor Eduardo Rivera Parés (señor Rivera Parés). En 1997, el señor Rivera Parés solicitó a su abuela paterna, la señora Monserrate Rivera Román (señora Rivera Román), un préstamo de $30,000 para realizar ciertas inversiones en Estados Unidos. La señora Rivera Román consintió en prestar el dinero solicitado por su nieto, pero solicitó una garantía de pago. Ante dicho pedido, la señora Delgado ac-cedió a otorgar como garantía un inmueble privativo de su propiedad sito en el barrio Boquerón del municipio de Cabo Rojo.
El 18 de noviembre de 1997, la señora Rivera Román emitió un cheque a nombre del señor Eduardo Rivera por la cantidad de $30,000. Las partes no acordaron un plazo para el pago del préstamo. Diez días más tarde, el 28 de noviembre de 1997, la peticionaria y la señora Rivera Ro-mán otorgaron la escritura número 309 intitulada Com- *155 praventa, mediante la cual la señora Delgado “vendió” el solar que radica en Cabo Rojo a la señora Rivera Román por el precio de $12,000. Según surge de los testimonios de las partes en el juicio en su fondo y de los diversos docu-mentos judiciales que obran en autos, las partes acordaron que una vez se saldara el préstamo, la señora Rivera Ro-mán le “vendería” de vuelta la propiedad a la peticionaria mediante la correspondiente escritura pública. Según ad-mitió la peticionaria en el juicio, ella nunca inscribió la referida escritura de compraventa en el Registro de la Propiedad. Véase Apéndice del recurso de certiorari, págs. 237-238.
Transcurridos varios años, la señora Delgado y el señor Rivera Parés pagaron la suma de $15,000, adeudando así la cantidad de $15,000. Luego de intentar cobrar la deuda sin éxito, la señora Rivera Román vendió la propiedad en controversia a su nieta, la señora Sheida Rivera Siverio y al esposo de esta última, el señor Luis Martínez (esposos Martínez-Rivera). Dicha compraventa se realizó el 10 de marzo de 2000 por el precio de $15,000.
El 12 de julio de 2001, tras conocer de la referida venta, la peticionaria presentó una demanda sobre sentencia de-claratoria, accesión y daños contra los esposos Martínez-Rivera. En esencia, alegó que era dueña del solar en con-troversia, que la escritura de compraventa otorgada entre ella y la señora Rivera Román fue simulada con el compro-miso de que, una vez se pagara el préstamo, la señora Rivera Román otorgaría otra escritura para traspasar nueva-mente la propiedad a su nombre y que los esposos Martínez-Rivera, con conocimiento del hecho que el solar le pertenecía a ella, convencieron a la señora Rivera Román para que les vendiera el inmueble por debajo de su justo valor en el mercado.
En su demanda, la señora Delgado solicitó que el Tribunal de Primera Instancia declarara nula, simulada, ilegal y sin causa la escritura de compraventa otorgada entre ella y *156 la señora Rivera Román. Además, solicitó que se declarase que los esposos Martínez-Rivera adquirieron el inmueble de quien no era dueño, por lo que no tienen derecho pro-pietario sobre el mismo. Finalmente, reclamó la accesión de las estructuras construidas en el solar y la correspon-diente indemnización por los daños y perjuicios sufridos a raíz de la privación de su propiedad.
Así las cosas, en diciembre de 2001 la peticionaria pre-sentó una demanda enmendada para incluir a la señora Rivera Román como parte demandada y al señor Rivera Parés como demandante. Pendiente el pleito ante el Tribunal de Primera de Instancia, los esposos Rivera-Martínez constituyeron un pagaré hipotecario y enajenaron el in-mueble a terceras personas por la suma de $50,000.
El 17 de febrero de 2005, tras celebrar el juicio en su fondo, el Tribunal de Primera Instancia dictó sentencia a favor de la demandante peticionaria y condenó a los co-demandados a pagar solidariamente la cantidad de $45,000.(1) El foro primario entendió probado que la señora Rivera Román concedió a los demandantes un préstamo condicionado a que se le otorgara una garantía y que luego ella incumplió el acuerdo con los demandantes al enajenar el inmueble dado en garantía, acto que les irrogó daños. Además, determinó que los esposos Martínez-Rivera res-pondían de forma solidaria por los daños que sufrió la de-mandante peticionaria puesto que, con pleno conocimiento de los acuerdos habidos entre ella y la señora Rivera Ro-mán, adquirieron la propiedad y luego la vendieron a unas terceras personas. En fin, el foro primario impuso respon-sabilidad a la señora Rivera Román por incumplir el con-trato de préstamo que tenía con los demandantes y a los esposos Martínez-Rivera por adquirir la propiedad por una suma menor a su valor en el mercado, aun cuando conocían *157 que estaban adquiriendo de quien no era dueña del inmueble. (2)
Inconformes, los esposos Martínez-Rivera recurrieron al Tribunal de Apelaciones. Dicho tribunal revocó la senten-cia apelada y declaró “sin lugar” la demanda. En primer lugar, el foro apelativo intermedio determinó que la causa de acción presentada contra los esposos Martínez-Rivera estaba prescrita. Entendió que la misma era de índole ex-tracontractual y que se presentó un año y cuatro meses después de que la demandante peticionaria advino en co-nocimiento de la compraventa entre la señora Rivera Ro-mán y los esposos Martínez-Rivera. En segundo lugar, el Tribunal de Apelaciones resolvió que el contrato de com-praventa íue simulado y que en realidad el ñegocio entre las partes fue un contrato de garantía hipotecaria. Al vali-dar el contrato de garantía hipotecaria, el Tribunal de Ape-laciones indicó que la señora Rivera Román ejerció el dere-cho que su contrato le confería y qué ésta enajenó la propiedad para recuperar el dinero que se le adeudaba.
Insatisfecha con la determinación del Tribunal de Ape-laciones, la señora Delgado acudió ante nosotros mediante un recurso de certiorari. Alega que erró el Tribunal de Ape-laciones al determinar que la presente reclamación es de índole extracontractual, puesto que se trata de una acción declarativa de simulación contractual. Además, aduce que erró el Tribunal de Apelaciones al validar el contrato disi-mulado como si fuera de garantía hipotecaria, aun cuando el mismo no consta inscrito en el Registro de la Propiedad.
*158 Por otro lado, alega la peticionaria que la actuación del foro apelado de validar la enajenación hecha por la señora Rivera Román en virtud de que se trató de un contrato de garantía hipotecaria tiene el efecto de burlar la prohibición del pacto comisorio contenida en el Artículo 1780 del Có-digo Civil de Puerto Rico, 31 L.P.R.A. see. 5048. En vista de que la posterior enajenación del inmueble hace impráctica su reivindicación, la señora Delgado solicita que reinstale-mos la sentencia del Tribunal de Primera Instancia, que le concedió la cantidad de $45,000 como indemnización.
El 16 de febrero de 2007 expedimos el auto de certiorari. Con el beneficio de los alegatos de la peticionaria y de los esposos Martínez-Rivera, procedemos a resolver.
I — i t-H
Como asunto de umbral, debemos determinar cuál es la verdadera naturaleza de la causa de acción que nos ocupa. Es menester advertir que la demandante peticionaria instó una demanda contra la señora Rivera Román y contra los esposos Martínez-Rivera. En cuanto a la reclamación contra la señora Rivera Román, los hechos antes reseñados demuestran que se trata de una reclamación de simulación contractual. Sin embargo, existe controversia sobre si la causa de acción de la peticionaria frente a los recurridos es de índole extracontractual. Comenzamos analizando este asunto.
En el presente caso, el Tribunal de Apelaciones deter-minó que la causa de acción incoada contra los recurridos era de carácter extracontractual. Amparado en el hecho de que la peticionaria reconoció que se enteró de la venta he-cha a los recurridos varios días después de que se otorgó la escritura el 10 de marzo de 2000, el Tribunal de Apelacio-nes determinó que la reclamación instada el 12 de julio de 2001 contra los esposos Martínez-Rivera estaba prescrita *159 para esa fecha. Así, desestimó la causa de acción en cuanto a los recurridos.
Por su parte, los recurridos aducen en su comparecencia que la reclamación presentada en su contra no es de in-cumplimiento de contrato, pues ellos no formaron parte de los acuerdos entre la peticionaria y la señora Rivera Román. En todo caso, alegan que de entenderse que ellos conocían los acuerdos entre la peticionaria y la señora Rivera Román, su responsabilidad sería por interferencia torticera con un contrato entre terceros.
Contrario a la determinación del Tribunal de Apelacio-nes y a las alegaciones de los recurridos, entendemos que el hecho de que los esposos Martínez-Rivera reclamen ser terceros ajenos al contrato simulado no convierte el re-clamo presentado en su contra como de carácter extracontractual. De igual modo, el hecho de que la reivin-dicación del inmueble no sea posible porque los esposos Martínez-Rivera lo enajenaron, no implica que su respon-sabilidad esté predicada en una acción de daños y peijui-cios extracontractuales.
Un examen de la demanda presentada contra los espo-sos Martínez-Rivera revela que la peticionaria alegó que la compraventa concertada con la señora Rivera Román era nula y que los recurridos no tenían la condición de terceros regístrales porque adquirieron la propiedad a sabiendas de que no le pertenecía a la señora Rivera Román. Esta recla-mación, por lo tanto, lleva ínsita una acción de nulidad del título de la señora Rivera Román y, por consiguiente, del título de los esposos Martínez-Rivera.
De lo anterior se deduce que estamos ante una acción real sobre un bien inmueble. La causa de acción incoada contra los esposos Martínez-Rivera está relacionada con la existencia de un derecho de propiedad sobre un bien inmueble. Es, por lo tanto, una acción que está sujeta a un término prescriptivo de 30 años. Art. 1863 del Código Civil, 31 L.P.R.A. see. 5293. Según esta determinación, forzoso es *160 concluir que el Tribunal de Apelaciones erró al resolver que la acción incoada contra los esposos Martínez-Rivera es de naturaleza extracontractual que estaba prescrita al mo-mento de sú presentación.
Aclarada la naturaleza de la presente acción, procede-mos a examinar las controversias ante nuestra considera-ción.
III
A. En esencia, nos corresponde realizar dos determi-naciones medulares. Primero, debemos examinar la alega-ción de la peticionaria sobre la existencia de un contrato de compraventa simulado. A raíz de esta petición debemos constatar si la intención de las partes al contratar fue, en efecto, vender y comprar, o si, por el contrario, el contrato de compraventa otorgado en este caso tuvo el propósito de encubrir un contrato de préstamo en garantía. En segundo término, debemos evaluar la alegación de los esposos de que la prueba desfilada en el juicio demostró que son ter-ceros de buena fe a quienes la presente acción no debe afectar.
Veamos la normativa aplicable a la alegación de simu-lación contractual.
B. Según intimamos, la presente acción se desenvuelve en el ámbito de la simulación de la causa en un contrato de compraventa. Como sabemos, la causa es un elemento constitutivo de todo contrato. Art. 1227 del Código Civil, 31 L.P.R.A. see. 3432. La causa debe existir y debe ser lícita; es decir, no puede ser contraria a las leyes o a la moral. íd. Véase Sánchez Rodríguez v. López Jiménez, 116 D.P.R. 172, 181 (1985).
Sin embargo, el requisito de que medie una causa contractual no impide reconocerle validez a un contrato que posea una causa falsa, entendida como una causa fingida o que encubre otra verdadera. Véase J. Puig Brutau, Funda- *161 méntos de Derecho Civil, 3ra ed., Barcelona, Ed. Bosch, 1988, T. II, Vol. I, pág. 442. Véase, además, M. Careaba Fernández, La simulación en los negocios jurídicos, Barcelona, Ed. Bosch, 1986.
Como ejemplo de ello, el Código Civil preceptúa que “[l]a expresión de una causa falsa en los contratos dará lugar a la nulidad, si no se probase que estaban fundados en otra verdadera y lícita”. Art. 1228 del Código Civil, 31 L.P.R.A. see. 3433. Sobre la base de este principio estatutario, le hemos conferido validez a un contrato simulado que ex-prese una causa falsa, siempre que se pruebe que el nego-cio encubre una causa verdadera y lícita. Véase Reyes v. Jusino, 116 D.P.R. 275, 284 (1985).
En esencia, “[l]a simulación implica una contradicción entre la voluntad interna y la voluntad declarada. De esta contradicción nace un negocio jurídico que se califica de aparente”. L. Diez-Picazo y A. Gullón, Sistema de Derecho Civil, 4ta ed., Madrid, Ed. Tecnos, 1984, Vol. II, pág. 79. Siguiendo al comentarista italiano Francisco Ferrara, Diez-Picazo y Gullón indican que en un negocio simulado concurren las características siguientes:
a) Una divergencia querida y deliberadamente producida entre la voluntad y su manifestación.
b) Un acuerdo simulatorio entre las partes....
c) Un fin de engaño a los terceros extraños al acto. Id. Véase, además, F. Ferrara, La simulación de los negocios jurí-dicos, (Rafael Atard y Juan A. de la Puente, trads.), 3ra ed., Madrid, Ed. Rev. Der. Privado, 1953, págs. 44-49.
Al enfrentar supuestos de simulación contractual hemos reconocido la existencia de dos tipos de simulación: la relativa y la absoluta. En la absoluta, las partes crean la apariencia de un negocio jurídico, pero en realidad no realizan un negocio real. Díaz García v. Aponte Aponte, 125 D.P.R. 1, 10 (1989). En este tipo de simulación las partes no alteran la situación jurídica anterior. Véase Puig Brutau, op. cit, págs. 442-445.
*162 Por otra parte, “[l]a simulación relativa consiste en dis-frazar un acto: en ella se realiza aparentemente un negocio jurídico, queriendo y llevando a cabo en realidad otro distinto. Los contratantes concluyen un negocio verdadero, que ocultan bajo una forma diversa, de tal modo que su verdadera naturaleza permanezca secreta”. Ferrara, op. cit., pág. 205. De esta forma,
... bajo la falsa apariencia se encubre un negocio realmente querido que los contratantes desean sustraer de la curiosidad e indiscreción de terceros”. Díaz García v. Aponte Aponte, supra, pág. 10. Véanse, además: Martínez v. Colón Franco, Concepción, 125 D.P.R. 15, 25 (1989); Hernández Usera v. Srio. de Hacienda, 86 D.P.R. 13, 18 (1962).
C. Sobre la naturaleza de una acción declarativa de simulación contractual como la que nos ocupa, es menester señalar que la misma tiene como fin desvelar la simulación e imprimirle validez jurídica al contrato verdadero y disimulado, siempre que concurran los elementos necesarios para su validez. Mediante esta acción judicial se pretende aclarar la divergencia entre la verdadera voluntad de las partes y la expresada en el negocio jurídico aparente. Según indica Puig Brutau, en un caso de simulación relativa, “la acción se dirigirá, en primer lugar, a obtener la declaración de la falsedad del contrato aparente o simulado, y en segundo lugar, aunque simultáneamente, a la declaración de que existe otro contrato, oculto o disimulado, cuya validez o nulidad deberá quedar establecida en la sentencia ...”. Puig Brutau, op. cit., pág. 450.
En virtud de la condición declarativa de esta acción de simulación, la doctrina sostiene que las partes que han participado en la simulación tienen legitimación para alegarla en el foro judicial puesto que mediante ella persiguen validar su verdadera intención. Véanse: Puig Brutau, op. cit., págs. 450-451; Diez-Picazo y Gullón, op. cit., págs. 81-82; Careaba, op. cit., pág. 67. Habida cuenta de que la acción para declarar la simulación procura hacer efectiva la realidad jurídica frente a una realidad aparente que *163 nunca ha existido, la doctrina civilista postula que la misma no prescribe. Véanse: Puig Brutau, op. cit., pág. 452; Diez-Picazo y Gullón, op. cit., pág. 83; Ferrara, op. cit., págs. 406-408.(3)
En términos probatorios, le corresponde a quien im-pugna el negocio presentar prueba tendente a establecer la simulación. Así, una vez establecida la simulación o la existencia de un contrato simulado, “se ... [crea] una pre-sunción de simulación absoluta contra el negocio disimu-lado que compete al gestor rebatir mediante la existencia de una causa verdadera y lícita”. Reyes v. Jusino, supra, pág. 284.
En pronunciamientos anteriores hemos puntualizado la dificultad probatoria de establecer la simulación. Díaz García v. Aponte Aponte, supra, pág. 11. Ello, en vista de que la simulación implica la existencia de un negocio fingido y otro verdadero. Tradicionalmente, la contradeclaración se perfila como el medio de prueba que recoge la voluntad real de las partes. Véase Reyes v. Jusino, supra, págs. 284-285. “La contradeclaración refleja la verdadera intención [de la partes], mostrando, o que un contrato no ha existido, o que existió otro diferente o entre personas distintas.” Ferrara, op. cit., pág. 369. Indudablemente, entonces, la prueba de simulación se facilita cuando existe un documento que recoja la contradeclaración. Véanse: Ferrara, op. cit.; Puig Brutau, op. cit., pág. 453.
Sin embargo, en un caso como el presente, en el que no existe el referido documento, la doctrina española acepta que las partes pueden acudir a cualquier medio de prueba, incluyendo la prueba oral. Puig Brutau, op. cit., pág. 453; Careaba, op. cit., págs. 123-126. En este sentido, al adju-dicar acciones de simulación contractual presentadas por terceras personas que no han participado del contrato si- *164 mulado, hemos indicado que el promovente de la acción puede valerse de presunciones y prueba testifical para cumplir con su carga probatoria. Díaz García v. Aponte Aponte, supra, pág. 12. Sobre ello, debemos recordar que en materia general de la prueba de las obligaciones, el Có-digo Civil dispone que “[l]a prueba de testigos será admi-sible en todos los casos en que no se halle expresamente prohibida”. Art. 1198 del Código Civil, 31 L.P.R.A. see. 3331. Por lo tanto, ausente una prohibición expresa, nada impide en nuestro ordenamiento recibir prueba oral sobre la simulación en un caso en el que un contratante alega la nulidad del negocio. Además, no podemos olvidar que la prueba oral es admisible para determinar la verdadera in-tención de las partes en un contrato. Llambías v. Pagán, 65 D.P.R. 451 (1945).
De igual forma, es menester señalar que la admisión judicial o extrajudicial del demandado mediante la cual éste reconoce la existencia de un negocio simulado y aparente es un medio probatorio eficaz para establecer la simulación contractual y rebatir la presunción de existencia de causa en el negocio aparente o simulado.
Finalmente, es importante aclarar que el hecho de que el contrato impugnado por simulación se consigne en una escritura pública no nos impide declarar su simulación pues, “[s]i bien existe una presunción legal en favor de la veracidad de los hechos consignados en una escritura pública, tal presunción no es concluyente y puede ser rebatida por la correspondiente prueba de hechos contrarios a los consignados en dicha escritura ...”. Monserrate v. Lopés, 80 D.P.R. 491, 501 (1958).
A la luz de esta normativa, procedemos a examinar si nos encontramos ante un supuesto de simulación contractual.
*165 IV
Los hechos que dan base a la presenté controversia de-muestran que la misma surge de un acuerdo concertado entre familiares. En 1997, la señora Rivera Román le con-cedió un préstamo de $30,000 a su nieto, el señor Rivera Parés. Unos días más tarde, la señora Delgado, entonces esposa del señor Rivera Parés, otorgó una escritura pública en la que se hizo constar que ella le vendía un solar sito en Cabo Rojo a la señora Rivera Román. Transcurridos varios años desde que se otorgó la referida escritura, la señora Rivera Román vendió el inmueble a los esposos Martínez-Rivera, aquí recurridos. Ante dicho traspaso de titularidad, la señora Delgado instó la presente reclamación.
Luego de examinar los hechos antes relatados, entende-mos que nos encontramos ante un contrato simulado. Se trata de una simulación en la naturaleza del contrato, puesto que las partes simularon otorgar un tipo de con-trato cuando en realidad celebraron uno distinto. Véase Martínez v. Colón Franco, Concepción, supra, pág. 26. Tanto la transcripción de la prueba oral como los documen-tos que acompañan el presente recurso demuestran que las partes no otorgaron un contrato de compraventa, sino un contrato de garantía personal. En armonía con el principio civil de la autonomía de la voluntad en la contratación que rige en nuestra jurisdicción (Art. 1207 del Código Civil, 31 L.P.R.A. see. 3372), procede conferirle validez jurídica a este negocio jurídico de garantía personal.(4) Veamos la prueba que sustenta esta conclusión.
*166 Al testificar en la vista en su fondo, la señora Delgado y el señor Rivera Parés establecieron que acordaron otorgar a la señora Rivera Román el solar en garantía, en conside-ración al préstamo de $30,000 que ella les había concedido. Una vez saldado el préstamo, la señora Rivera Román les devolvería el inmueble. Del testimonio de la peticionaria, el cual no fue contradicho en este respecto, también se deduce que fue el notario autorizante de la escritura quien les sugirió denominar la escritura como de compraventa. Además, surge del testimonio de la peticionaria que en el acto de compraventa no medió el pago de $12,000 que se estipuló como precio. Por otro lado, en la conferencia con antelación al juicio, la señora Rivera Román aceptó que le concedió un préstamo a su nieto y que como garantía de pago se otorgó la escritura de compraventa, en la que ella figura como compradora del solar sito en Cabo Rojo. Véase Apéndice del Recurso de certiorari, pág. 59.
La prueba antes detallada sostiene la determinación del Tribunal de Primera Instancia de que en este caso las par-tes no tuvieron la intención de comprar ni vender un in-mueble, sino que su verdadero propósito fue garantizar el préstamo preexistente. Por lo tanto, la alegada transmi-sión de la propiedad mediante una escritura pública sólo perseguía la devolución del préstamo de $30,000. Además, el negocio de compraventa no se perfeccionó, pues no medió el pago de los $12,000. La ausencia de este elemento carac-terístico de la compraventa demuestra, entonces, que se trató de un contrato simulado. Véase Reyes v. Jusino, supra, pág. 285. En virtud de ello, es menester concluir que la compraventa fue simplemente un caparazón que encu-brió el negocio de préstamo con garantía personal.
Desenmascarado el negocio simulado, nos corresponde imprimirle validez jurídica al negocio disimulado de garantía. En virtud de este negocio, la señora Rivera Ro-mán advino acreedora y tenía a su favor una garantía de *167 pago. Es decir, este negocio no la convirtió en dueña del inmueble, puesto que no procede admitir la garantía como causa en un contrato de compraventa. Por lo tanto, la se-ñora Rivera Román no tenía la potestad de transmitir el dominio de la propiedad a terceras personas, aun ante el hecho de que sus deudores incumplieron con su obligación de pago.
Reconocer que la señora Rivera Román podía enajenar la propiedad dada en garantía equivaldría a sancionar el pacto comisorio que nuestro ordenamiento rechaza. Véanse: Arts. 1758 y 1780 del Código Civil, 31 L.P.R.A. sees. 5003 y 5048. Como sabemos, en el caso de la prenda y de la hipoteca, nuestro Código Civil le prohíbe al acreedor apropiarse de la cosa dada en garantía ante el incumplimiento del contrato garantizado. íd. Aun cuando somos conscientes de que la prohibición del pacto comisorio sólo aplica por mandato expreso a la prenda y a la hipoteca, entendemos que dicho precepto se debe extender por analogía al negocio que nos ocupa. Véase Sentencia del Tribunal Supremo español de 22 de diciembre de 1998, Aranzadi Núm. 9748. Al igual que ocurre con la hipoteca y la prenda, el negocio realizado por las partes en este caso persiguió garantizar una obligación principal. Por lo tanto, no podemos permitir que la acreedora en el presente caso se apropie del bien dado en garantía.
Habida cuenta de lo anterior, resolvemos que la señora Rivera Román tenía la obligación de recurrir a los tribuna-les de justicia para hacer valer su acreencia. En vista de que enajenó un inmueble cuyo dominio no le pertenecía, erró el Tribunal de Apelaciones al validar la referida transacción. Como corolario de ello, resolvemos que actuó correctamente el Tribunal de Primera Instancia al dictar sentencia en su contra condenándola a pagar una suma de dinero equivalente al valor estipulado del inmueble, previo el descuento de los $15,000 que la peticionaria le debía en concepto del contrato de préstamo.
*168 Esta determinación, sin embargo, no dispone de la tota-lidad de la controversia ante nuestra consideración, pues nos resta examinar si los esposos Martínez-Rivera son ter-ceros adquirentes de buena fe a quienes la presente acción no debe afectar.
V
Luego de escuchar el testimonio de la señora Miguelina Delgado y los respectivos testimonios de los esposos Martínez-Rivera, el Tribunal de Primera Instancia determinó que éstos conocían las condiciones del contrato de préstamo existente entre la peticionaria y la señora Rivera Román. A raíz de ello, determinó que los esposos MartínezRivera eran solidariamente responsables por el pago del valor del inmueble en controversia. Es decir, el foro primario le brindó entera credibilidad a la peticionaria, quien testificó que se comunicó vía telefónica con la Sra. Sheida Rivera para informarle los términos de su acuerdo con la señora Rivera Román. En ausencia de pasión, prejuicio, parcialidad o error manifiesto del tribunal de instancia, no debemos intervenir con esta determinación de hechos del foro primario ni con su apreciación de la prueba desfilada en el juicio en su fondo. Véanse: Lugo v. Municipio Guayama, 163 D.P.R. 208 (2004)\ Trinidad v. Chade, 153 D.P.R. 280, 291 (2001).
Sobré la base de la anterior determinación de hecho a la que le debemos deferencia, es menester concluir que los recurridos no son terceros registrales, pues no poseían la referida buena fe al adquirir el inmueble en controversia. Como sabemos, toda persona que adquiera de buena fe y a título oneroso algún derecho de quien en el registro aparezca con facultad para transmitirlo, será protegida en su adquisición una vez inscriba su título en el Registro de la Propiedad. Art. 105 de la Ley Hipotecaria y *169 del Registro de la Propiedad, 30 L.P.R.A. sec. 2355; Banco de Santander v. Rosario Cirino, 126 D.P.R. 591, 603-604 (1990). Así, el tercero recibe la protección de la buena fe registral, aun cuando se invalide el título del transferente, siempre que las causas de nulidad no suijan expresamente del registro.
Además, según se deduce de lo anterior, por mandato de nuestra ley hipotecaria el tercero debe poseer buena fe al momento de adquirir pará ser acreedor de la protección provista por la fe pública registral. Esta buena fe, a su vez, consiste en “ ‘el desconocimiento, por parte del tercer ad-quirente, de la inexactitud del Registro’ ”. Banco de Santander v. Rosario Cirino, supra, pág. 605.
Como indicamos, la pruebá aquilatada por el Tribunal de Primera Instancia en el presente caso estableció que los esposos Martínez-Rivera conocían la naturaleza de los acuerdos habidos entre la peticionaria y la señora Rivera Román. Más aún, el foro primario determinó que la señora Sheida Rivera era consciente de que la peticionaria era la verdadera dueña del inmueble. Este conocimiento sobre el defecto en el título de la señora Rivera Román priva a los recurridos de la condición de terceros adquirentes de buena fe. Por lo tanto, la presente acción les perjudica, aun cuando hayan inscrito su título en el Registro de la Propiedad.
Establecida la nulidad del título de la señora Rivera Ro-mán, no hay duda de que la transmisión a los esposos Mar-tínez-Rivera también adolece de nulidad. Estos no adqui-rieron su título de la verdadera dueña de la propiedad y carecen de la protección provista por la fe pública registral. No siendo los esposos Martínez-Rivera terceros regístrales como reclaman, es menester concluir que responden frente a la demandante peticionaria.
Finalmente, a la luz de la alegación de que el notario autorizante de la escritura de compraventa, el Ledo. Luis A. Arroyo Vázquez, indujo a las partes a otorgar una escri- *170 tura de compraventa simulada, procede remitir el expe-diente del presente caso a la Oficina del Procurador General para que tome la acción correspondiente.
Por los fundamentos antes expuestos, procede revocar la sentencia del Tribunal de Apelaciones y reinstalar la sen-tencia del Tribunal de Primera Instancia.

Se dictará sentencia de conformidad.

El Juez Asociado Señor Rivera Pérez no intervino.

 Las partes estipularon que el valor del inmueble era $60,000. Por lo tanto, la cantidad de $45,000 equivale al valor del inmueble luego de descontados los $15,000 que la demandante peticionaria le adeudaba a la señora Rivera Román.

 Luego de dictada la sentencia, el foro primario emitió una sentencia enmen-dada nuna pro tune, en la que eliminó una nota al calce que se refería a una decla-ración jurada de la señora Rivera Román que había sido suprimida. Véase Apéndice del Recurso de certiorari, págs. 185-190. También corrigió un error tipográfico en la parte dispositiva de la sentencia. Id. Además, el Tribunal de Primera Instancia emi-tió una resolución en la que denegó varias mociones de reconsideración presentadas por los demandados. En la resolución reiteró su conclusión de que en el presente caso se configuró un contrato dé préstamo con garantía y concluyó que no estaba prescrita la reclamación presentada contra los esposos Martínez-Rivera. íd., págs. 174-183.

 Sin embargo, el transcurso del tiempo podría causar que el derecho invocado se extinga por prescripción. Véanse: J. Puig Brutau, Fundamentos de Derecho Civil, Barcelona, Ed. Bosch, 1988, T. II, Vol. I, pág. 452; F. Ferrara, La simulación de los negocios jurídicos, (Rafael Atard y Juan A. de la Puente, trads.), 3ra ed., Madrid, Ed. Rev. Der. Privado, 1953, págs. 407-408.

 La peticionaria nos solicita negarle validez jurídica al negocio de garantía, pues entiende que se trata de una hipoteca que carece de existencia jurídica porque no se inscribió en el Registro de la Propiedad. Sobre este argumento, basta señalar que el principio de libertad de contratación recogido en el Artículo 1207 de nuestro Código Civil, 31 L.P.R.A. see. 3372, admite cualesquiera pactos que no sean contra-rios a la ley,' la moral y el orden público. Por lo tanto, nada en nuestro ordenamiento nos obliga a negarle.validez al contrato de garantía. Claro está, reconociendo que no se trata de una garantía real como lo sería la hipoteca, sino de una garantía personal.